**People of the State of Illinois, Plaintiff-Appellee, v. Thomas Kirby (Otherwise Called Kirby Thomas) (Impleaded), Defendant-Appellant.**

Gen. No. 53,610.

First District, Second Division.

March 10, 1970.

Michael Seng, Jenner & Block, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

The defendant was convicted, following a jury trial, of the offense of robbery in violation of Ill Rev Stats, c 38, § 18–1 (1967). Judgment was entered on the verdict and defendant sentenced to a term of not less than five nor more than twelve years in the Illinois State Penitentiary. In this appeal the defendant contends that the trial court erred in denying his motions to suppress physical evidence and identification testimony.

At the hearing on the motion to suppress physical evidence, Kirby and his codefendant testified that they were arrested in the vicinity of 2400 West Madison Street in the City of Chicago, Illinois, on February 22, 1968. The defendant further testified that after police stopped him they searched his person, recovering his personal identification and certain traveler's checks bearing the name Willie Shard. The officers did not inform him that he resembled a man wanted by the police for confidence game, at the time of his arrest.

The arresting officers testified for the State. Officer Baggio Panepinto testified that he and his partner were riding in a squad car in the vicinity of 2200 West Madison when he noticed that the defendant Kirby, then walking, resembled one Alphonso Hampton, who was wanted for con game according to a police department bulletin which bore Hampton's picture and description, and which was in the squad car.

Officer Panepinto further testified that the defendant and his companion were stopped and asked to identify themselves. While Kirby was looking for identification in his wallet, he, Panepinto, noticed certain traveler's checks bearing the name "Willie" in the wallet. He asked the defendant who they belonged to and he responded that they were play money. The officer then asked to see the checks. Kirby handed them to Panepinto who was then able to observe the complete name which the checks bore, "Willie Shard." When asked

who Willie Shard was, Kirby stated that he won the checks in a crap game. On cross-examination the officer testified that Alphonso Hampton was 5′ 2″ in height and defendant Kirby 5′ 5″ in height. At the time defendant was stopped, the officer did not know that Willie Shard had been the victim of a robbery.

Officer James Rizzi's testimony, insofar as it was relevant to the present defendant, corroborated that of Officer Panepinto.

At the close of this testimony the trial court denied defendant's motion to suppress the traveler's checks and a Social Security Card later taken from defendant and also bearing the name "Willie Shard."

At the hearing on defendant's motion to suppress the identification testimony of the victim, Kirby and his codefendant each testified that he was not advised of his right to have counsel present prior to and at the time of his identification. The State did not cross-examine, nor did they present any evidence. Defendant's motion was denied.

The testimony at trial with respect to Shard's identification of the defendant at the police station was as follows:

WILLIE SHARD

On February 22, 1968, two days after he was robbed and one day after he reported the robbery to the police, he was requested, by phone, to come to the police station. Two police officers picked him up and brought him to the station. The officers who picked him up asked if he was robbed and if he could identify the offenders, and he responded in the affirmative.

When he walked into the police station the defendant and codefendant were seated at a desk. A police officer asked him if he recognized his assailants and he identified the defendant, along with his codefendant.

326

## OFFICER JAMES RIZZI

When Mr. Shard arrived at the station, two hours after the defendant had been brought in, the defendants were seated in a large room. Shard walked into the room and stated that Kirby and his codefendant were the men who had robbed him. The men identified were then asked to stand and Shard reaffirmed the identification. To the best of his knowledge, Mr. Shard was not prompted or coached prior to entering the room.

## RALPH BEAN (codefendant)

He and defendant Kirby were seated at a table with police officers when Mr. Shard arrived. He walked in and stood by the door until approached by another man, who the witness assumed was a police officer. The officer brought Mr. Shard toward the table where he and Kirby were seated. As they approached the table Shard said something to the effect that he did not know or could not identify them, and one of the police officers said that the witness and Kirby must be the ones, since they had Shard's property.

This last statement was objected to as hearsay and the objection was sustained.

██ ██ Defendant first contends that the trial court erred in denying his motion to suppress physical evidence. He argues that his arrest was without probable cause and therefore, the physical evidence taken from his person should have been suppressed as the product of an unlawful arrest. While the defendant properly states the proposition of law, the testimony of Officer Panepinto, which the trial court was at liberty to, and apparently did believe, clearly presents a factual situation in which the rule is not applicable. The officer testified that he noticed the traveler's checks in defendant's wallet while defendant was looking for identification. Further, the officer testified that defendant surrendered

the checks to him upon request. Clearly the checks were not recovered by the officer as the result of a search. Rather, their discovery falls within the purview of the plain view doctrine of People v. Davis, 33 Ill2d 134, 210 NE2d 530 (1965).

■■ Defendant is also correct in his assertion that the mere possession of the goods of another is not sufficient to establish probable cause for arrest. Here, however, an additional element is present. Defendant's possession, coupled with his having given conflicting explanations of that possession, is sufficient to establish probable cause for arrest. The Social Security Card taken from defendant was not recovered until after probable cause for the arrest existed.

This determination, that defendant's arrest was based upon probable cause, is also determinative of his second contention, that the identification testimony should have been suppressed as the product of an unlawful arrest.

■ Defendant next contends that the trial court erred in denying his motion to suppress identification testimony in that he was not advised of his right to have counsel present at the showup, relying on U. S. v. Wade, 388 US 218, 87 S Ct 1926 (1967) and Gilbert v. California, 388 US 263, 87 S Ct 1951 (1967). In Wade, the defendant was placed in a police lineup subsequent to his having been indicted and prior to trial without notice to, and in the absence of, his court appointed counsel. In finding the procedure improper the court held that a post-indictment lineup was a critical stage of the proceedings against the accused and therefore the Sixth Amendment guarantee of assistance of counsel applied thereto.

In Gilbert, the accused was also placed in a post-indictment lineup without notice to defense counsel. All the witnesses who identified Gilbert at trial testified that they had also identified him at the lineup. The

court, following Wade, held: (1) the lineup was held in violation of Gilbert's Sixth Amendment rights and therefore testimony with respect thereto was not admissible against him; and (2) it was error to admit into evidence the in-court identification of the accused without first determining that such identification was not tainted by the illegal lineup, but was of independent origin.

People v. Palmer, 41 Ill2d 571, 244 NE2d 173 (1969) determines the issue adversely to defendant. There the Supreme Court, in interpreting the language of Wade, Gilbert, and the subsequent case of Simmons v. U. S., 390 US 377, 88 S Ct 967 (1968), held those decisions to apply only to post-indictment confrontations. Here the record clearly shows the showup to have taken place prior to defendant's indictment.

Defendant's third contention in support of his allegation that testimony regarding his showup identification should have been suppressed constitutes a direct attack upon the use of a showup as an identification procedure. He argues that the showup is inherently suggestive in nature and therefore where no compelling reason for securing an immediate identification such as was found to exist in Stovall v. Denno, 388 US 293, 87 S Ct 1967 (1967) exists, a lineup should always be held. We are aware of no such requirement. On the contrary, the Supreme Court has noted that while the showup has been observed to involve a degree of suggestion, not every exhibition of an accused by means of a showup, where a lineup is possible, constitutes a denial of due process. People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152 (1969).

The defendant also contends that the circumstances surrounding his identification were so suggestive as to deny him due process of law. In support of this argument defendant again points out that a showup, rather than a lineup, procedure was used, which allowed the

identification witness to view him while he was seated between two police officers. He further calls attention to the fact that Mr. Shard knew the purpose for his trip to the police station, to make an identification.

██ There is no doubt that an identification procedure may be so suggestive in a given case as to deny the accused due process of law. But when called upon to determine whether due process has been denied a particular individual, courts must consider the totality of the circumstances surrounding the identification, not merely those which tend to support defendant's theory. Stovall v. Denno, 388 US 293, 87 S Ct 1967 (1967). Here the victim was attacked during the daylight hours and had an excellent opportunity, according to his own testimony, to observe the assailants before, during, and after the assault. In addition, he was positive in his identification of defendant as one of the offenders. In this same regard, Officer Panepinto testified that Mr. Shard identified the defendant immediately upon sight. In view of the totality of the circumstances surrounding the identification, we do not believe that defendant was denied due process of law.

██ Finally, the defendant has contended that he was denied effective assistance of counsel at the hearing on his motion to suppress the identification testimony. Defendant points out that although the written motion to suppress submitted to the court contained two points, the first relating to Sixth Amendment rights and the second to due process considerations, defense counsel elicited testimony only regarding the first, right to counsel. This allegation of denial of effective assistance of counsel is directed only to the hearing on motion to suppress identification testimony. It appears to be an effort by defendant to save, for purposes of appeal, a point not properly presented to the trial court. We deem

this contention to be moot in view of our having considered defendant's due process argument.

Having found each of the contentions of defendant to be without merit, we affirm the judgment of the Circuit Court.

Judgment affirmed.

McCORMICK P. J., and BURKE, J., concur.