# KIRBY v. ILLINOIS

No. 70–5061.   Argued November 11, 1971—Reargued March 20–21, 1972—Decided June 7, 1972

STEWART, J., announced the Court's judgment and delivered an opinion in which BURGER, C. J., and BLACKMUN and REHNQUIST, JJ., joined. BURGER, C. J., filed a concurring statement, *post*, p. 691.   POWELL, J., filed a statement concurring in the result, *post*, p. 691.   BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and

MARSHALL, JJ., joined, *post,* p. 691. WHITE, J., filed a dissenting statement, *post,* p. 705.

*Jerold S. Solovy* argued the cause for petitioner on the reargument and *Michael P. Seng* argued the cause on the original argument. *Messrs. Solovy* and *Seng* were on the briefs for petitioner.

*James B. Zagel,* Assistant Attorney General of Illinois, reargued the cause for respondent. With him on the brief were *William J. Scott,* Attorney General, *Joel M. Flaum,* First Assistant Attorney General, and *E. James Gildea,* Assistant Attorney General.

*Ronald M. George,* Deputy Attorney General, argued the cause on the reargument for the State of California as *amicus curiae* urging affirmance. With him on the brief were *Evelle J. Younger,* Attorney General, and *William E. James,* Assistant Attorney General.

MR. JUSTICE STEWART announced the judgment of the Court and an opinion in which THE CHIEF JUSTICE, MR. JUSTICE BLACKMUN, and MR. JUSTICE REHNQUIST join.

In *United States* v. *Wade,* 388 U. S. 218, and *Gilbert* v. *California,* 388 U. S. 263, this Court held "that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Gilbert* v. *California, supra,* at 272. Those cases further held that no "in-court identifications" are admissible in evidence if their "source" is a lineup conducted in violation of this constitutional standard. "Only a *per se* exclusionary rule as to such testimony can be an effective sanction," the Court said, "to assure that law

enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." *Id.,* at 273. In the present case we are asked to extend the *Wade-Gilbert per se* exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense.

On February 21, 1968, a man named Willie Shard reported to the Chicago police that the previous day two men had robbed him on a Chicago street of a wallet containing, among other things, traveler's checks and a Social Security card. On February 22, two police officers stopped the petitioner and a companion, Ralph Bean, on West Madison Street in Chicago.[1] When asked for identification, the petitioner produced a wallet that contained three traveler's checks and a Social Security card, all bearing the name of Willie Shard. Papers with Shard's name on them were also found in Bean's possession. When asked to explain his possession of Shard's property, the petitioner first said that the traveler's checks were "play money," and then told the officers that he had won them in a crap game. The officers then arrested the petitioner and Bean and took them to a police station.

Only after arriving at the police station, and checking the records there, did the arresting officers learn of the Shard robbery. A police car was then dispatched to Shard's place of employment, where it picked up Shard and brought him to the police station. Immediately upon entering the room in the police station where the petitioner and Bean were seated at a table, Shard positively identified them as the men who had

---

[1] The officers stopped the petitioner and his companion because they thought the petitioner was a man named Hampton, who was "wanted" in connection with an unrelated criminal offense. The legitimacy of this stop and the subsequent arrest is not before us.

robbed him two days earlier. No lawyer was present in the room, and neither the petitioner nor Bean had asked for legal assistance, or been advised of any right to the presence of counsel.

More than six weeks later, the petitioner and Bean were indicted for the robbery of Willie Shard. Upon arraignment, counsel was appointed to represent them, and they pleaded not guilty. A pretrial motion to suppress Shard's identification testimony was denied, and at the trial Shard testified as a witness for the prosecution. In his testimony he described his identification of the two men at the police station on February 22,[2] and identified them again in the courtroom as the men

---

[2] "Q. All right. Now, Willie, calling your attention to February 22, 1968, did you receive a call from the police asking you to come down to the station?
"A. Yes, I did.

.     .     .     .     .

"Q. When you went down there, what if anything, happened, Willie?
"A. Well, I seen the two men was down there who robbed me.

.     .     .     .     .

"Q. Who took you to the police station?
"A. The policeman picked me up.

.     .     .     .     .

"MR. POMARO: Q. When you went to the police station did you see the two defendants?
"A. Yes, I did.
"Q. Do you see them in Court today?
"A. Yes, sir.
"Q. Point them out, please?
"A. Yes, that one there and the other one. (Indicating.)
"MR. POMARO: Indicating for the record the defendants Bean and Kirby.
"Q. And you positively identified them at the police station, is that correct?
"A. Yes.
"Q. Did any police officer make any suggestion to you whatsoever?

.     .     .     .     .

"THE WITNESS: No, they didn't."

who had robbed him on February 20.[3]   He was cross-examined at length regarding the circumstances of his identification of the two defendants.   Cf. *Pointer* v. *Texas,* 380 U. S. 400.   The jury found both defendants guilty, and the petitioner's conviction was affirmed on appeal. *People* v. *Kirby,* 121 Ill. App. 2d 323, 257 N. E. 2d 589.[4]   The Illinois appellate court held that the admission of Shard's testimony was not error, relying upon an earlier decision of the Illinois Supreme Court, *People* v. *Palmer,* 41 Ill. 2d 571, 244 N. E. 2d 173, holding that the *Wade-Gilbert per se* exclusionary rule is not applicable to pre-indictment confrontations.

---

[3] "Q. Willie, when you looked back, when you were walking down the street and first saw the defendants, when you looked back, did you see them then?

"A. Yes, I seen them.

"Q. Did you get a good look at them then?

"A. Yes, I did.

"Q. All right.   Now, when they grabbed you and took your money, did you see them then?

"A. Yes, I did.

"Q. Did you get a good look at them then?

"A. Yes.

"Q. Both of them?

"A. Correct.

"Q. When they walked away did you see them then?

"A. Yes.

"Q. Did you look at them, Willie?

"A. Yes.

"Q. Did you get a good look at them?

"A. Yes.

"Q. Are those the same two fellows?   Look at them, Willie.

"A. Correct.

"Q. Are those the same two that robbed you?

"A. Yes.

"Q. You are sure, Willie?

"A. Yes."

[4] Bean's conviction was reversed. *People* v. *Bean,* 121 Ill. App. 2d 332, 257 N. E. 2d 562.

We granted certiorari, limited to this question. 402 U. S. 995.[5]

## I

We note at the outset that the constitutional privilege against compulsory self-incrimination is in no way implicated here. The Court emphatically rejected the claimed applicability of that constitutional guarantee in *Wade* itself:

> "Neither the lineup itself nor anything shown by this record that Wade was required to do in the lineup violated his privilege against self-incrimination. We have only recently reaffirmed that the privilege 'protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . .' *Schmerber* v. *California,* 384 U. S. 757, 761. . . ." 388 U. S., at 221.

> .  .  .  .  .

> "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused

---

[5] The issue of the applicability of *Wade* and *Gilbert* to pre-indictment confrontation has severely divided the courts. Compare *State* v. *Fields,* 104 Ariz. 486, 455 P. 2d 964; *Perkins* v. *State,* 228 So. 2d 382 (Fla.); *Buchanan* v. *Commonwealth,* 210 Va. 664, 173 S. E. 2d 792; *State* v. *Walters,* 457 S. W. 2d 817 (Mo.), with *United States* v. *Greene,* 139 U. S. App. D. C. 9, 429 F. 2d 193; *Rivers* v. *United States,* 400 F. 2d 935 (CA5); *United States* v. *Phillips,* 427 F. 2d 1035 (CA9); *Commonwealth* v. *Guillory,* 356 Mass. 591, 254 N. E. 2d 427; *People* v. *Fowler,* 1 Cal. 3d 335, 461 P. 2d 643; *Palmer* v. *State,* 5 Md. App. 691, 249 A. 2d 482; *People* v. *Hutton,* 21 Mich. App. 312, 175 N. W. 2d 860; *Commonwealth* v. *Whiting,* 439 Pa. 205, 266 A. 2d 738; *In re Holley,* 107 R. I. 615, 268 A. 2d 723; *Hayes* v. *State,* 46 Wis. 2d 93, 175 N. W. 2d 625.

to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. . . ." *Id.*, at 222.

It follows that the doctrine of *Miranda* v. *Arizona,* 384 U. S. 436, has no applicability whatever to the issue before us; for the *Miranda* decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial *interrogation* is inherently coercive.

The *Wade-Gilbert* exclusionary rule, by contrast, stems from a quite different constitutional guarantee—the guarantee of the right to counsel contained in the Sixth and Fourteenth Amendments. Unless all semblance of principled constitutional adjudication is to be abandoned, therefore, it is to the decisions construing that guarantee that we must look in determining the present controversy.

In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell* v. *Alabama,* 287 U. S. 45, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See *Powell* v. *Alabama, supra; Johnson* v. *Zerbst,* 304 U. S. 458; *Hamilton* v. *Alabama,* 368 U. S. 52; *Gideon* v. *Wainwright,* 372 U. S. 335; *White* v. *Maryland,* 373 U. S. 59; *Massiah* v. *United States,* 377 U. S. 201; *United States* v. *Wade,* 388 U. S. 218; *Gilbert* v. *California,* 388 U. S. 263; *Coleman* v. *Alabama,* 399 U. S. 1.

This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment,[6] and the Court

---

[6] "[D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their ar-

has recently held that it exists also at the time of a preliminary hearing. *Coleman* v. *Alabama, supra*. But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

The only seeming deviation from this long line of constitutional decisions was *Escobedo* v. *Illinois,* 378 U. S. 478. But *Escobedo* is not apposite here for two distinct reasons. First, the Court in retrospect perceived that the "prime purpose" of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* "to guarantee full effectuation of the privilege against self-incrimination . . . ." *Johnson* v. *New Jersey,* 384 U. S. 719, 729. Secondly, and perhaps even more important for purely practical purposes, the Court has limited the holding of *Escobedo* to its own facts, *Johnson* v. *New Jersey, supra,* at 733–734, and those facts are not remotely akin to the facts of the case before us.

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.

---

raignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself." *Powell* v. *Alabama,* 287 U. S. 45, 57.

It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.[7] See *Powell* v. *Alabama,* 287 U. S., at 66–71; *Massiah* v. *United States,* 377 U. S. 201; *Spano* v. *New York,* 360 U. S. 315, 324 (DOUGLAS, J., concurring).

In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: "The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the *prosecution,*' and that a post-indictment lineup is such a 'critical stage.' " (Emphasis supplied.) *Simmons* v. *United States,* 390 U. S. 377, 382–383. We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever.

## II

What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. As the Court pointed out in *Wade* itself, it is always necessary to "scrutinize *any* pretrial con-

---

[7] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U. S. Const., Amdt. VI.

frontation . . . ." 388 U. S., at 227. The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall* v. *Denno,* 388 U. S. 293; *Foster* v. *California,* 394 U. S. 440.[8] When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime.

*The judgment is affirmed.*

MR. CHIEF JUSTICE BURGER, concurring.

I agree that the right to counsel attaches as soon as criminal charges are formally made against an accused and he becomes the subject of a "criminal prosecution." Therefore, I join in the plurality opinion and in the judgment. Cf. *Coleman* v. *Alabama,* 399 U. S. 1, 21 (dissenting opinion).

MR. JUSTICE POWELL, concurring in the result.

As I would not extend the *Wade-Gilbert per se* exclusionary rule, I concur in the result reached by the Court.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

After petitioner and Ralph Bean were arrested, police officers brought Willie Shard, the robbery victim, to a room in a police station where petitioner and Bean were seated at a table with two other police officers. Shard testified at trial that the officers who brought him to the

---

[8] In view of our limited grant of certiorari, we do not consider whether there might have been a deprivation of due process in the particularized circumstances of this case. That question remains open for inquiry in a federal habeas corpus proceeding.

room asked him if petitioner and Bean were the robbers and that he indicated they were. The prosecutor asked him, "And you positively identified them at the police station, is that correct?" Shard answered, "Yes." Consequently, the question in this case is whether, under *Gilbert* v. *California,* 388 U. S. 263 (1967), it was constitutional error to admit Shard's testimony that he identified petitioner at the pretrial station-house showup when that showup was conducted by the police without advising petitioner that he might have counsel present. *Gilbert* held, in the context of a post-indictment lineup, that "[o]nly a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." *Id.,* at 273. I would apply *Gilbert* and the principles of its companion case, *United States* v. *Wade,* 388 U. S. 218 (1967), and reverse.[1]

In *Wade,* after concluding that the lineup conducted in that case did not violate the accused's right against self-incrimination, *id.,* at 221–223,[2] the Court addressed

---

[1] There is no room here for the application of the harmless-error doctrine. Because the admission of Shard's testimony about his showup identification thus requires reversal, there is no need for me to consider whether a remand would otherwise be necessary to afford the State an opportunity to demonstrate that Shard's in-court identification of petitioner, if that is what it was, see *ante,* at 686 n. 3, had an independent source. See *United States* v. *Wade,* 388 U. S. 218, 239–242 (1967); *Gilbert* v. *California,* 388 U. S. 263, 272 (1967).

[2] The plurality asserts that in view of that holding in *Wade,* "the doctrine of *Miranda* v. *Arizona,* 384 U. S. 436, has no applicability whatever to the issue before us." *Ante,* at 688. That assertion is necessary for the plurality because *Miranda* requires the presence of counsel before "the time that adversary judicial proceedings have been initiated against" the accused. *Ibid.* The assertion is nonetheless erroneous, for *Wade* specifically relied upon *Miranda* in establishing the constitutional principle that controls the applicability of the Sixth Amendment guarantee of the right to counsel at pretrial confrontations. See 388 U. S., at 226–227.

the argument "that the assistance of counsel at the lineup was indispensable to protect Wade's most basic right as a criminal defendant—his right to a fair trial at which the witnesses against him might be meaningfully cross-examined," *id.*, at 223–224. The Court began by emphasizing that the Sixth Amendment guarantee "encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" *Id.*, at 225. After reviewing *Powell* v. *Alabama,* 287 U. S. 45 (1932); *Hamilton* v. *Alabama,* 368 U. S. 52 (1961); and *Massiah* v. *United States,* 377 U. S. 201 (1964), the Court, 388 U. S., at 225, focused upon two cases that involved the right against self-incrimination:

> "In *Escobedo* v. *Illinois,* 378 U. S. 478, we drew upon the rationale of *Hamilton* and *Massiah* in holding that the right to counsel was guaranteed at the point where the accused, prior to arraignment, was subjected to secret interrogation despite repeated requests to see his lawyer. We again noted the necessity of counsel's presence if the accused was to have a fair opportunity to present a defense at the trial itself . . . ." *United States* v. *Wade,* 388 U. S., at 225–226.[3]

. . . . .

---

[3] The plurality asserts that "*Escobedo* is not apposite here." *Ante,* at 689. It was, of course, "apposite" in *Wade.* Hence, to say that *Johnson* v. *New Jersey,* 384 U. S. 719, 733–734 (1966), a case decided before *Wade,* "limited the holding of *Escobedo* to its own facts," *ante,* at 689, even if true, is to say nothing at all that is relevant to the present case. The plurality also utilizes *Johnson* for the proposition "that the 'prime purpose' of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* 'to guarantee full effectuation of the privilege against self-incrimination . . . .'" *Ibid.* In view of *Wade*'s specific reliance upon *Escobedo* and *Miranda,* that, obviously, is no distinction either. Moreover, it implies that the purpose of *Wade* was "to vindicate the constitutional right to counsel as such." That was not the purpose of *Wade,* as my extended summary of the opinion demonstrates.

"[I]n *Miranda* v. *Arizona,* 384 U. S. 436, the rules established for custodial interrogation included the right to the presence of counsel. The result was rested on our finding that this and the other rules were necessary to safeguard the privilege against self-incrimination from being jeopardized by such interrogation." *Id.,* at 226.

The Court then pointed out that "nothing decided or said in the opinions in [*Escobedo* and *Miranda*] links the right to counsel only to protection of Fifth Amendment rights." *Ibid.* To the contrary, the Court said, those decisions simply reflected the constitutional

"principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment . . . ." *Id.,* at 226–227.

This analysis led to the Court's formulation of the controlling principle for pretrial confrontations:

"In sum, the principle of *Powell* v. *Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.,* at 227 (emphasis in original).

It was that constitutional principle that the Court applied in *Wade* to pretrial confrontations for identification purposes. The Court first met the Government's contention that a confrontation for identification is "a mere preparatory step in the gathering of the prosecution's evidence," much like the scientific examination of fingerprints and blood samples. The Court responded that in the latter instances "the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." The accused thus has no right to have counsel present at such examinations: "they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." *Id.*, at 227–228.

In contrast, the Court said, "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." *Id.*, at 228. Most importantly, "the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." *Id.*, at 231–232. The Court's analysis of pretrial confrontations for identification purposes produced the following conclusion:

"Insofar as the accused's conviction may rest on a courtroom identification in fact the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial, the accused is deprived of that right of cross-ex-

amination which is an essential safeguard to his right to confront the witnesses against him. *Pointer* v. *Texas,* 380 U. S. 400. And even though cross-examination is a precious safeguard to a fair trial, it cannot be viewed as an absolute assurance of accuracy and reliability. Thus in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself. The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.'" *Id.,* at 235–236.

The Court then applied that conclusion to the specific facts of the case. "Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.'" *Id.,* at 236–237.

While it should go without saying, it appears necessary, in view of the plurality opinion today, to re-emphasize that *Wade* did not require the presence of counsel at pretrial confrontations for identification purposes simply on the basis of an abstract consideration of the words "criminal prosecutions" in the Sixth Amendment. Counsel is required at those confrontations because "the

dangers inherent in eyewitness identification and the suggestibility inherent in the context of the pretrial identification," *id.,* at 235,[4] mean that protection must be afforded to the "most basic right [of] a criminal defendant—his right to a fair trial at which the witnesses against him might be meaningfully cross-examined," *id.,* at 224. Indeed, the Court expressly stated that "[l]egislative or other regulations, such as those of local police departments, which eliminate the risks of abuse and unintentional suggestion at lineup proceedings and the impediments to meaningful confrontation at trial may also remove the basis for regarding the stage as 'critical.' " *Id.,* at 239; see *id.,* at 239 n. 30; *Gilbert* v. *California,* 388 U. S., at 273. Hence, "the initiation of adversary judicial criminal proceedings," *ante,* at 689, is completely irrelevant to whether counsel is necessary at a pretrial confrontation for identification in order to safeguard the accused's constitutional rights to confrontation and the effective assistance of counsel at his trial.

In view of *Wade,* it is plain, and the plurality today does not attempt to dispute it, that there inhere in a con-

---

[4] The plurality refers to "occasions during the course of a criminal investigation when the police do abuse identification procedures" and asserts that "[s]uch abuses are not beyond the reach of the Constitution." *Ante,* at 690. The constitutional principles established in *Wade,* however, are not addressed solely to police "abuses," as *Wade* explicitly pointed out:

"The few cases that have surfaced therefore reveal the existence of a process attended with hazards of serious unfairness to the criminal accused and strongly suggest the plight of the more numerous defendants who are unable to ferret out suggestive influences in the secrecy of the confrontation. We do not assume that these risks are the result of police procedures intentionally designed to prejudice an accused. Rather we assume they derive from the dangers inherent in eyewitness identification and the suggestibility inherent in the context of the pretrial identification." 388 U. S., at 234–235.

frontation for identification conducted after arrest [5] the identical hazards to a fair trial that inhere in such a confrontation conducted "after the onset of formal prosecutorial proceedings." *Id.,* at 690. The plurality apparently considers an arrest, which for present purposes we must assume to be based upon probable cause, to be nothing more than part of "a routine police investigation," *ibid.,* and thus not "the starting point of our whole system of adversary criminal justice," *id.,* at 689.[6] An arrest, according to the plurality, does not face the accused "with the prosecutorial forces of organized society," nor immerse him "in the intricacies of substantive and procedural criminal law." Those consequences ensue, says the plurality, only with "[t]he initiation of judicial criminal proceedings," "[f]or it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified." *Ibid.*[7] If these propositions do not amount to

---

[5] This case does not require me to consider confrontations that take place before custody, see, *e. g., Bratten* v. *Delaware,* 307 F. Supp. 643 (Del. 1969); *People* v. *Cesarz,* 44 Ill. 2d 180, 255 N. E. 2d 1 (1969); *State* v. *Moore,* 111 N. J. Super. 528, 269 A. 2d 534 (1970), nor accidental confrontations not arranged by the police, see, *e. g., United States* v. *Pollack,* 427 F. 2d 1168 (CA5 1970); *State* v. *Bibbs,* 461 S. W. 2d 755 (Mo. 1970), nor on-the-scene encounters shortly after the crime, see, *e. g., Russell* v. *United States,* 133 U. S. App. D. C. 77, 408 F. 2d 1280 (1969); *United States* v. *Davis,* 399 F. 2d 948 (CA2 1968).

[6] Cf. *Miranda* v. *Arizona,* 384 U. S. 436, 477 (1966) (emphasis added):

"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation *while in custody at the station or otherwise deprived of his freedom of action in any significant way. It is at this point that our adversary system of criminal proceedings commences,* distinguishing itself at the outset from the inquisitorial system recognized in some countries."

[7] The plurality concludes that "[i]t is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which

"mere formalism," *ibid.,* it is difficult to know how to characterize them.[8]   An arrest evidences the belief of the police that the perpetrator of a crime has been caught.  A post-arrest confrontation for identification is not "a mere preparatory step in the gathering of the prosecution's evidence."  *Wade, supra,* at 227.  A primary, and frequently sole, purpose of the confrontation for identification at that stage is to accumulate proof to buttress the conclusion of the police that they have the offender in hand.  The plurality offers no reason, and I can think of none, for concluding that a post-arrest confrontation for identification, unlike a post-charge confrontation, is not among those "critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality."  *Id.,* at 224.

The highly suggestive form of confrontation employed in this case underscores the point.  This showup was particularly fraught with the peril of mistaken

---

alone the explicit guarantees of the Sixth Amendment are applicable."  *Ante,* at 690.  This Court has taken the contrary position with respect to the speedy-trial guarantee of the Sixth Amendment: "Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge.  But we decline to extend the reach of the amendment to the period prior to arrest."  "In the case before us, neither appellee was arrested, charged, or otherwise subjected to formal restraint prior to indictment.  It was this event, therefore, which transformed the appellees into 'accused' defendants who are subject to the speedy trial protections of the Sixth Amendment."  *United States* v. *Marion,* 404 U. S. 307, 321, 325 (1971).

[8] As the California Supreme Court pointed out, with an eye toward the real world, "the establishment of the date of formal accusation as the time wherein the right to counsel at lineup attaches could only lead to a situation wherein substantially all lineups would be conducted prior to indictment or information."  *People* v. *Fowler,* 1 Cal. 3d 335, 344, 461 P. 2d 643, 650 (1969).

identification. In the setting of a police station squad room where all present except petitioner and Bean were police officers, the danger was quite real that Shard's understandable resentment might lead him too readily to agree with the police that the pair under arrest, and the only persons exhibited to him, were indeed the robbers. "It is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." *Id.*, at 234. The State had no case without Shard's identification testimony,[9] and safeguards against that consequence were therefore of critical importance. Shard's testimony itself demonstrates the necessity for such safeguards. On direct examination, Shard identified petitioner and Bean not as the alleged robbers on trial in the courtroom, but as the pair he saw at the police station. His testimony thus lends strong support to the observation, quoted by the Court in *Wade*, 388 U. S., at 229, that "[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." Williams & Hammelmann, Identification Parades, Part I, [1963] Crim. L. Rev. 479, 482.

The plurality today "decline[s] to depart from [the] rationale" of *Wade* and *Gilbert*. *Ante,* at 690. The plurality discovers that "rationale" not by consulting those decisions themselves, which would seem to be the appropriate course, but by reading one sentence in *Simmons* v. *United States,* 390 U. S. 377, 382–383 (1968), where no right-to-counsel claim was either asserted or considered. The "rationale" the plurality discovers is, appar-

---

[9] Bean took the stand and testified that he and petitioner found Shard's traveler's checks and Social Security card two hours before their arrest strewn upon the ground in an alley.

ently, that a post-indictment confrontation for identification is part of the prosecution. The plurality might have discovered a different "rationale" by reading one sentence in *Foster* v. *California,* 394 U. S. 440, 442 (1969), a case decided after *Simmons,* where the Court explained that in *Wade* and *Gilbert* "this Court held that because of the possibility of unfairness to the accused in the way a lineup is conducted, a lineup is a 'critical stage' in the prosecution, at which the accused must be given the opportunity to be represented by counsel." In *Foster,* moreover, although the Court mentioned that the lineups took place after the accused's arrest, it did not say whether they were also after the information was filed against him.[10] Instead, the Court simply pointed out that under *Stovall* v. *Denno,* 388 U. S. 293 (1967), *Wade* and *Gilbert* were "applicable only to lineups conducted after those cases were decided." 394 U. S., at 442. Similarly, in *Coleman* v. *Alabama,* 399 U. S. 1 (1970), another case involving a pre-*Wade* lineup, no member of the Court saw any significance in whether the accused had been formally charged with a crime before the lineup was held.[11]

---

[10] In fact, the lineups in *Foster* took place before the information was filed. The crime occurred on January 25, 1966. After the accused was arrested, he was exhibited to the witness in two lineups, both conducted within two weeks of January 25. The information was not filed until March 17. *Foster* v. *California,* No. 47, O. T. 1968, Brief for Respondent 3–8.

[11] In fact, the lineup in *Coleman* took place before the accused were formally charged. The crime occurred on July 24, 1966. The accused were arrested on September 29, and the lineup was held on October 1. The preliminary hearing was not until October 14, and the indictments were not returned until November 11. *Coleman* v. *Alabama,* No. 72, O. T. 1969, Brief for Petitioners 5–7; App. 84; see 399 U. S., at 26 (STEWART, J., joined by BURGER, C. J., dissenting).

On those facts, the plurality opinion adverted to the timing of the lineup only to the extent of pointing out that it was held "about two months after the assault and seven months before petitioners'

The plurality might also have discovered a different "rationale" for *Wade* and *Gilbert* had it examined *Stovall v. Denno, supra,* decided the same day. In *Stovall,* the confrontation for identification took place one day after the accused's arrest. Although the accused was first brought to an arraignment, it "was postponed until [he] could retain counsel." 388 U. S., at 295. Hence, in the plurality's terms today, the confrontation was held "before the commencement of any prosecution." *Ante,* at 690.[12] Yet in that circumstance the Court in *Stovall*

---

trial." *Id.,* at 3 (BRENNAN, J., joined by DOUGLAS, WHITE, and MARSHALL, JJ.). The plurality opinion then simply noted that "[p]etitioners concede that since the lineup occurred before [*Wade* and *Gilbert*] were decided . . . , they cannot invoke the holding of those cases requiring the exclusion of in-court identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of counsel." *Id.,* at 3–4.

Mr. Justice Black in his concurring opinion took no notice at all of when the lineup was conducted. Instead, reiterating his view that *Wade* "should be held fully retroactive," he insisted "that petitioners in this pre-*Wade* case were entitled to court-appointed counsel at the time of the lineup in which they participated and that Alabama's failure to provide such counsel violated petitioners' rights under the Sixth and Fourteenth Amendments." *Id.,* at 13. Nor did Mr. Justice Harlan refer to the timing of the lineup in expressing his "dissent from the refusal to accord petitioners the benefit of the *Wade* holding, neither petitioner having been afforded counsel at the police 'lineup' identification." Mr. Justice Harlan's summary of *Wade,* like that of the prevailing opinion, did not limit its "rationale" to post-charge confrontations: "The *Wade* rule requires the exclusion of any in-court identification preceded by a pretrial lineup where the accused was not represented by counsel, unless the in-court identification is found to be derived from a source 'independent' of the tainted pretrial viewing." *Id.,* at 21.

[12] The chain of events in *Stovall* was as follows: The crime occurred on the night of August 23, 1961. The accused was arrested on the afternoon of August 24 and appeared for arraignment on the morning of August 25. The arraignment was postponed until August 31 so that he could retain counsel. The confrontation with the witness took place about noon on August 25. At the arraignment

stated that the accused raised "the same alleged constitutional errors in the admission of allegedly tainted identification evidence that were before us" in *Wade* and *Gilbert*. The Court therefore found that the case "provide[d] a vehicle for deciding the extent to which the rules announced in *Wade* and *Gilbert*—requiring the exclusion of identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of his counsel—are to be applied retroactively." 388 U. S., at 294. Indeed, the Court's explicit holding was "that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date. The rulings of *Wade* and *Gilbert* are therefore inapplicable in the present case." *Id.*, at 296. Hence, the accused in *Stovall* did not receive the benefit of the new exclusionary rules because they were not applied retroactively; he was not denied their benefit because his confrontation took place before he had "been formally charged with a criminal offense." *Ante,* at 691. Moreover, in the course of its retroactivity discussion, 388 U. S., at 296–301, the Court repeated the phrase "pretrial confrontations for identification" or its equivalent no less than 10 times. Not once did the Court so much as hint that *Wade* and *Gilbert* applied only to confrontations after the accused "had been indicted or otherwise formally charged with [a] criminal offense." *Ante,* at 684. In fact, at one point the Court summarized *Wade* as holding "that the confrontation [for identification] is a 'critical stage,' and that counsel

on August 31, the committing magistrate appointed counsel for the accused and set the felony examination for September 1. That examination was never held, for on August 31 the indictment was returned. *Stovall* v. *Denno,* No. 254, O. T. 1966, Brief for Respondent 34.

is required at *all* confrontations." 388 U. S., at 298 (emphasis added).

*Wade* and *Gilbert,* of course, happened to involve post-indictment confrontations. Yet even a cursory perusal of the opinions in those cases reveals that nothing at all turned upon that particular circumstance.[13] In short, it is fair to conclude that rather than "declin-[ing] to depart from [the] rationale" of *Wade* and *Gilbert, ante,* at 690, the plurality today, albeit purporting to be engaged in "principled constitutional adjudication," *id.,* at 688, refuses even to recognize that "rationale." For my part, I do not agree that we "extend" *Wade* and *Gilbert, id.,* at 684, by holding that the principles of those cases apply to confrontations for identification conducted after arrest.[14] Because Shard testified at trial

---

[13] The *Wade* dissenters found no such limitation: "The rule applies to any lineup, to any other techniques employed to produce an identification and *a fortiori* to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place, and whether before or after indictment or information." *United States* v. *Wade,* 388 U. S., at 251 (WHITE, J., joined by Harlan and STEWART, JJ., dissenting in part and concurring in part).

[14] The plurality rather surprisingly asserts that "[t]he issue of the applicability of *Wade* and *Gilbert* to pre-indictment confrontation has *severely* divided the courts." *Ante,* at 687 n. 5 (emphasis added). As the plurality's citations reveal, there are decisions from five States, including Illinois, that have refused to apply *Wade* and *Gilbert* to pre-indictment confrontations for identification. Ranged against those five, however, are decisions from at least 13 States. See *People* v. *Fowler,* 1 Cal. 3d 335, 461 P. 2d 643 (1969); *State* v. *Singleton,* 253 La. 18, 215 So. 2d 838 (1968); *Commonwealth* v. *Guillory,* 356 Mass. 591, 254 N. E. 2d 427 (1970); *Palmer* v. *State,* 5 Md. App. 691, 249 A. 2d 482 (1969); *People* v. *Hutton,* 21 Mich. App. 312, 175 N. W. 2d 860 (1970); *Thompson* v. *State,* 85 Nev. 134, 451 P. 2d 704 (1969); *State* v. *Wright,* 274 N. C. 84, 161 S. E. 2d 581 (1968); *State* v. *Isaacs,* 24 Ohio App. 2d 115, 265 N. E. 2d 327 (1970); *Commonwealth* v. *Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970); *In re Holley,* 107 R. I. 615, 268 A. 2d 723 (1970); *Martinez*

about his identification of petitioner at the police station showup, the exclusionary rule of *Gilbert,* 388 U. S., at 272–274, requires reversal.

MR. JUSTICE WHITE, dissenting.

*United States* v. *Wade,* 388 U. S. 218 (1967), and *Gilbert* v. *California,* 388 U. S. 263 (1967), govern this case and compel reversal of the judgment below.

---

v. *State,* 437 S. W. 2d 842 (Tex. Ct. Crim. App. 1969); *State* v. *Hicks,* 76 Wash. 2d 80, 455 P. 2d 943 (1969); *Hayes* v. *State,* 46 Wis. 2d 93, 175 N. W. 2d 625 (1970).

In addition, *every* United States Court of Appeals that has confronted the question has applied *Wade* and *Gilbert* to pre-indictment confrontations. See *United States* v. *Greene,* 139 U. S. App. D. C. 9, 429 F. 2d 193 (1970); *Cooper* v. *Picard,* 428 F. 2d 1351 (CA1 1970); *United States* v. *Ayers,* 426 F. 2d 524 (CA2 1970); *Government of Virgin Islands* v. *Callwood,* 440 F. 2d 1206 (CA3 1971); *Rivers* v. *United States,* 400 F. 2d 935 (CA5 1968); *United States* v. *Broadhead,* 413 F. 2d 1351 (CA7 1969); *United States* v. *Phillips,* 427 F. 2d 1035 (CA9 1970); *Wilson* v. *Gaffney,* 454 F. 2d 142 (CA10 1972). As Chief Judge Lewis, speaking for the Court of Appeals for the Tenth Circuit, put it in the last-cited case:

"In both *Wade* and *Gilbert* the lineups were conducted after indictments had been returned; in the case at bar, the lineup occurred before petitioner had been formally charged. But surely the assistance of counsel, now established as an absolute post-indictment right does not arise or attach because of the return of an indictment. The confrontation of a lineup . . . cannot have a constitutional distinction based upon the lodging of a formal charge. Every reason set forth by the Supreme Court in *Wade* . . . for the assistance of counsel post-indictment has equal or more impact when projected against a pre-indictment atmosphere. We hold that petitioner had a right to counsel at the lineup here considered." *Id.,* at 144.