515 P.2d 609

**STATE of Arizona, Appellee,**

v.

**Joseph Lee SCHMIDGALL and Jesus Robert Felix, Appellants.**

**Nos. 1 CA–CR 532, 1 CA–CR 533.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 8, 1973.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Rudy Gerber, Sp. Deputy Public Defender, Phoenix, for appellants.

## OPINION

EUBANK, Presiding Judge.

In June of 1972, appellants, after a jury trial in Maricopa County, were convicted of the crime of depositing or exploding an explosive device on, in or near a building where persons inhabited, frequented or passed. A.R.S. § 13–922. They were each sentenced to the state prison for a term of not less than eight nor more than ten years. Appellants raise four issues on appeal, namely: (1) were their Miranda rights violated; (2) were the pretrial identifications a violation of due process or invalid due to the absence of counsel; (3) were the in-court identifications tainted; and (4) was the search warrant or its execution violative of Arizona law?

■ The appellants' first contention concerns a conversation at the police station between the appellants which was overheard by a police officer and which was used in obtaining a search warrant. The conversation occurred after the appellants had been given the Miranda warn-ings. It was not made in response to any interrogation by the police, nor was a conversation with the police taking place at the time. It was quite simply a conversation between the appellants that was overheard by the police. In the absence of any interrogation, Miranda issues do not even arise. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■ Appellants also argue in this appeal that the right to counsel should be extended to pre-indictment identification procedures as well as to post-indictment identification procedures. The law is quite clear in this area that pre-indictment line-ups and showups are not a critical stage of the proceedings requiring the presence of counsel. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Taylor, 109 Ariz. 518, 514 P.2d 439 (1973); State v. Branch, 108 Ariz. 351, 498 P.2d 218 (1972).

■ Appellants also contend that the station-house showup conducted by the police was unduly suggestive and violated appellants' right to due process under the law. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Taylor, supra.

An examination of the underlying facts in this case is required in order to make a proper evaluation of this contention. On October 20, 1971, David Wallace was working at a service station at 26th Street and East Indian School Road, within the city of Phoenix. At approximately 7:30 P.M. two men in an early model pickup truck entered the station to check their tires and wash the windshield. Wallace gave one of the men a tire gauge, while the other entered the office. Shortly thereafter the gauge was returned, the men

left, and Wallace found that the radio in the office was missing. Later that evening at approximately 11:00 P.M. Wallace observed the same truck proceeding south on 24th Street near the station, and saw it enter a drugstore parking lot adjacent to the station. Wallace left the station in order to get the license number of the truck. He saw one man in the truck and another in the alley behind the Kenpo Karate School Building, the scene of the later explosion. Upon returning to the station, Wallace heard an explosion, and the police were notified. Wallace gave the police a complete description of the truck and the two men. One man was described as white, six feet tall, with shoulder-length hair, a full reddish beard, wire-rimmed glasses and a straight nose, wearing a red and white shirt and levis. The other man was described as Mexican with a mustache, a goatee, tattoos on both arms and wearing a light blue sport shirt and levis. At 11:55 P.M. that same evening, police officers picked up the appellants at a local bar. The appellants and their truck matched the exact description given by Wallace. At 1:30 A.M. Wallace went to the police station, again gave the above descriptions, and then looked into three or four (the number was disputed) interior rooms of the police station. Without hesitation he individually identified the appellants who occupied separate rooms. He did not identify the two other individuals who occupied a separate room or rooms. Admittedly, both of these other two individuals were caucasians; one had long hair, but neither had a beard or tattoos.

■ Viewing these facts under the criteria outlined in Neil and Taylor, supra, it is the opinion of this Court that the trial court properly concluded that the pretrial identification procedure did not violate the defendants' due process rights. Considering the opportunity of the witness Wallace to view the appellants at the service station and again to a lesser extent at the scene of the crime; his degree of attention as exemplified by the extremely accurate description he gave police after the explosion and again prior to the identification; the certainty of his identification at the police station; and the short interval that had elapsed since the crime; the likelihood of misidentification in this totality of circumstances was slight and we cannot say that the trial court erred in finding that the show-up identification was not unduly suggestive.

■ Appellants also contend that the in-court identification was tainted by the show-up identification. This argument fails for two reasons: (1) the record reveals by clear and convincing evidence that Wallace could make the in-court identification based solely on his viewing of the defendants at and near the service station separate and apart from the show-up, and (2) the finding that the show-up was not unduly suggestive.

■ Appellants finally contend that the search warrant used to obtain incriminating evidence against them was violative of A.R.S. § 13–1441. This section requires the warrant to be directed to a "peace officer", which is defined by A.R.S. § 1–215.23 as follows:

> "23. 'Peace officers' mean sheriffs of counties, constables, marshals and policemen of cities and towns."

Appellants contend that the above section was not complied with since the search warrant was procured by the affidavit of a federal officer who presented it to a justice of the peace and also participated in its execution. This argument must fail due to the presence of a Tucson police officer throughout the entire procedure, from presentation through execution of the warrant. Such participation is sufficient compliance with the requirements of A.R.S. § 13–1441 and A.R.S. § 1–215.23. See State v. Dudgeon, 13 Ariz.App. 464, 477 P.2d 750 (1970).

Accordingly, the judgment is affirmed.

JACOBSON, Chief Judge Division 1, and HAIRE, J., concur.