Ricky Malcolm STONER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–440.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1977.

Frank C. Gatewood, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Charles S. Rogers, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Ricky Malcolm Stoner, hereinafter referred to as defendant, was charged in the District Court, Cleveland County, Case No. CRF–76–36, with the offense of Robbery With Firearms. The case was tried to a jury and a guilty verdict was returned, with punishment being assessed at fifteen (15) years' imprisonment. From said judgment and sentence defendant has perfected an appeal to this Court.

Randy Lee Craig testified that at about 1:00 a. m. on October 22, 1975, he was working at the Humpty Food Store in Moore, Oklahoma, when defendant and another man, identified as Ronald Keith Thompson, entered the store. Thompson and defendant walked around the store and then walked up to the witness. Thompson pulled a gun, and demanded the money from the safe. While the witness was opening the safe, defendant ordered two other employees to give him money from the registers. Subsequently, Thompson took the other two employees into a back room. The witness remained in the front of the store with defendant. Thompson returned and took the witness into a back room, told him to lie on the floor and handcuffed his hands behind his back. The other two employees were similarly handcuffed.

After defendant and Thompson fled, the witness got up and returned to the front of the store. A customer entered the store and he asked her to call the police.

On cross-examination it was revealed that about three months subsequent to the robbery the witness had occasion to observe defendant in a lineup at the Oklahoma City jail.

Chuck Kilgore, also employed at the Humpty Food Store on the night in question gave testimony corroborative of the previous witnesses. He too positively identified defendant in court as one of the robbers, however, he further stated that he had not seen defendant, or a photograph of him since the night of the robbery.

Officer Fred Whyte identified the handcuffs used to restrain the victims as being State's Exhibits Nos. 1 and 2. He further testified as to his initial investigation.

Sergeant Ray Homer, also of the Moore Police Department, testified as to his participation in the investigation, and also as to the link which he formed in the chain of custody of State's Exhibits Nos. 1 and 2, the handcuffs. He also testified, without objection, that he was present at the lineup attended by the witness Craig, and that Craig identified defendant as one of the perpetrators of the crime charged. Following this witness' testimony the State rested.

Defendant's first witness was Ronald Keith Thompson, who stated that he was presently charged with the same offense as defendant (although, apparently, he was to be tried separately). He testified that at, or about, the time of the robbery he was not with defendant. On cross-examination the witness refused to answer questions pertaining to whether or not he he had committed the robbery.

Defendant's sister, Patricia Ann Moore, stated that on the evening of October 21, she, defendant and two others went to the movies which ended about 11:30 or 12:00. They then went to the witness' mother's house, then to a store, and then to the witness' home, arriving there about 12:30 a. m. There, they ate and watched television. About 2:00 a. m. on the morning of the 22nd the witness stated that defendant left with a girl named Teresa, and spent the night at her house, defendant's car remaining in the witness' drive all night.

Teresa Nickelberry stated that on the night in question she was one of the three persons with defendant at the movies. Her account of what occurred on the evening in question was corroborative of the previous witness. She also stated that after she and defendant left his sister's home, at about 2:00 a. m., they went to the witness' home where they remained until about 5:00 a. m., at which time defendant's mother called and asked him to take her to work, and he left. She further stated that she was aware that defendant was married.

Roseta Givens testified that although she was not one of the three who accompanied the defendant to the movies on the night in question she was at that same movie on that night, and she observed defendant there.

Defendant's mother was next to testify, stating that at about 5:30 a. m. on the morning of October 22, she called defendant at Teresa's house and asked him to take her to work. She further stated that on that morning she had to give defendant money for gas.

Defendant then testified, corroborating the account given by his witnesses concerning his whereabouts on the night in question. Further, he denied committing the crime for which he was charged. On cross-examination the defendant stated that he had been convicted of second degree burglary. Following this testimony the defense rested.

Randy Craig was called by the State in rebuttal. He stated that he observed Ronald Keith Thompson testify in the trial of this cause, and that said Thompson was one of the men who held up Humpty Foods on the night in question.

■ Defendant's first assignment of error contains two propositions, both concerning the pretrial lineup at which the witness Craig identified defendant. The first proposition is that testimony concerning the lineup was inadmissible inasmuch as defendant was not provided with counsel prior to the lineup.

The record reflects that the lineup was held prior to charges being filed against defendant. This being so, then under the rule enunciated by the Supreme Court of the United in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and followed by this Court in *Wilson v. State,* Okl.Cr., 556 P.2d 1311 (1976), it was not necessary to provide defendant with counsel at the time of the lineup.

■ Defendant's second proposition asserts that the lineup was conducted in such a suggestive manner that the witness Craig's in court identification of defendant was tainted, and should therefore have been excluded. However, as we view the record no evidence was presented which would show that the lineup was improperly conducted. The physical descriptions of the participants were all roughly the same. No one suggested or intimated to the witness which one of the lineup participants was the suspect. Further, the witness did not hesitate or equivocate in his identification of defendant. In *Wilson v. State,* supra, this Court held that it is necessary to examine the totality of the circumstances surrounding the lineup in order to determine if it was unfair or necessarily suggestive. After carefully examining the record we conclude that it was not. Defendant's first assignment of error is therefore without merit.

Defendant's second and third assignments of error are improperly before us inasmuch as no objections were raised at trial to the errors asserted on appeal. We therefore decline to discuss them.

■ Defendant's fourth assignment of error is that a sentence of fifteen years is excessive. This contention is likewise without merit, as the sentence of fifteen years for armed robbery does not shock the conscience of this Court. See, *Hill v. State,* Okl.Cr., 550 P.2d 1356 (1976).

■ Defendant's final assignment of error is that the trial court erred in overruling his motion for a new trial based on newly discovered evidence. It was asserted in the motion that the evidence would consist of a confession by Ronald Keith Thomp-

son to the crime for which defendant was charged. Additionally, Thompson would state that the defendant did not participate in the robbery. It was further asserted in the motion that Thompson would also name the person who did participate in the robbery.

Syllabus No. 9, in *England v. State*, Okl. Cr., 276 P.2d 270 (1954), states that:

"It is well settled that the granting of a new trial on newly discovered testimony is largely within the discretion of the trial court, and is not to be exercised except when there is reasonable probability that, if the evidence had been introduced, a different result would have been reached, and that courts will not ordinarily grant new trials upon the ground of newly discovered evidence where the evidence sought to be introduced is cumulative, or for the purpose of impeachment."

We are of the opinion that the trial court did not abuse its discretion in denying defendant's motion for new trial based on newly discovered evidence inasmuch as the State's case was clear and convincing, and there is no reasonable probability that introduction of this evidence would change the jury's verdict since the newly discovered evidence was cumulative in nature.

For the foregoing reasons the judgment and sentence is *AFFIRMED*.

BUSSEY, P. J., concurs.