319 So.2d 219 (1975)
Larry Darnell HOWARD
v.
STATE of Mississippi.
No. 48600.
Supreme Court of Mississippi.
September 29, 1975.
Rehearing Denied October 20, 1975.
Johnson & Walker, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, SMITH and ROBERTSON, JJ.
GILLESPIE, Chief Justice.
Larry Howard was convicted in the Circuit Court of Hinds County of the crime of attempted armed robbery and sentenced to a twenty-five year term in the penitentiary.
The victim was a young female secretary who was alone in her office in the Bankers Trust Plaza Building in Jackson during the noon hour. A young man entered the office inquiring of a man who did not work there, and he was so informed. The young man left but returned in a few minutes, pointed a pistol at the victim and demanded money. She had none. He pulled the victim into an office, made sexual advances, and, when she answered the telephone contrary to the intruder's order, she was struck on the head with the gun which fired into the wall. The intruder then left. The victim observed the intruder about ten minutes.
The victim viewed a number of photographs the day of the crime and identified Howard, a sixteen-year-old black male. The next day Howard was arrested and the victim picked Howard out of a lineup. She requested another lineup and again identified Howard. Other lineups were held and Howard was identified by two other persons who saw a young black male in the building at about the time of the attempted robbery. Four other people who *220 saw a black male in the building at or about the time of the attempted robbery were unable to identify Howard. Howard offered several alibi witnesses.
The principal question is whether Howard was denied due process because of the trial court's refusal to grant a preliminary evidentiary hearing on the motion to suppress identification.
Defendant filed in advance of trial a motion to suppress identification by the victim and all other persons and alleged that after his arrest defendant was placed in a series of lineups at the police station and was identified as the person who committed the crime of armed robbery by the victim and other persons. He alleged (1) he was denied counsel at the lineups and denied the right or opportunity to be represented by counsel, and (2) the lineups were held under conditions which were impermissibly suggestive with respect to identifying defendant as the perpetrator of the crime. The motion stated conclusions only.
We find that the first ground assigned in the motion is not well taken. The lineups were conducted prior to indictment. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).
On the due process aspect of the motion to suppress identification, the court, at a hearing prior to trial on the merits, declined to hear evidence and inquired of defendant's counsel what testimony he intended to offer. Counsel stated that he intended to offer the defendant and his mother, the people who identified defendant, and two officers who were under subpoena. The court ruled that evidence should be offered at the trial of the case. Counsel requested to make a tender of the proof, which the court allowed. He dictated a statement of what defendant and his mother would testify, and their testimony contained no facts that would show that the lineup identifications were illegal. The officers who were under subpoena were called during the trial. The three witnesses who identified defendant testified during the trial in chambers outside the presence of the jury.
The victim first identified the defendant from photographs. She testified in chambers that she was shown a large number of photographs and within a short time identified the defendant. There was nothing in the testimony to indicate that there was anything unduly suggestive concerning her identification of the defendant by photographs prior to the lineups. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court stated:
Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and with decisions of other courts on the question of identification by photograph. 390 U.S. at 384, 88 S.Ct. at 971.
*221 The defendant's counsel vigorously requested a full evidentiary hearing on all aspects of the lineup identifications of the defendant and the court should have conducted a full hearing in advance of trial as requested. The stated question has given the Court considerable concern and the record has been examined and re-examined to determine if the totality of the circumstances as revealed by the entire record shows that the defendant was denied due process. We have concluded that it does not.
The leading case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), dealt at length with both the necessity for counsel to be present at a post-indictment identification as well as with the determination of whether the in-court identification had an independent origin, and whether, in any event, the introduction of the evidence was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Wade case was reversed because the Court stated that on the record before it, "We cannot make the determination whether the in-court identifications had an independent origin."
In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), which involved a pre-indictment, out-of-court identification of a defendant without counsel, the Court declined to impose the per se exclusionary rule. In Kirby, as it had earlier said in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court said that it is always necessary to scrutinize any pre-trial confrontation, and due process forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification.
In Poole v. State, 216 So.2d 425 (Miss. 1968), this Court analyzed the Federal standards, and, quoting from Wade, stated as follows:
A per se exclusionary rule was not applied in Wade, Stovall or Gilbert, supra, to all in court identifications which occurred after illegal confrontations. The "independent source" doctrine formulated by Justice Holmes was recognized by Wade as being available to re-establish the validity of the offered evidence. "Of course this does not mean that the facts thus obtained [illegally] become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, * * *." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).
The Supreme Court in Wade quotes with approval the test formulated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) to be used in determining the application of the independent source doctrine.
Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959). 371 U.S. at 488, 83 S.Ct. at 417.
This test is also translated by Wade into language applicable to the identification problem.
[T]o establish by clear and convincing evidence that the in court identifications were based upon observations of the suspect other than the line up identification. 388 U.S. at 240, 87 S.Ct. at 1939.
A study of the authorities indicates that the per se exclusionary rule does not apply to this case; and the in-court identification was admissible because the state established by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than at the lineup identifications. We are of the opinion that there is no showing of illegality in either the photographic identification *222 of the defendant or of the several lineup identifications.
The victim saw the attempted robber twice: once briefly, and the second time, about ten minutes. State's witness, George, saw him twice: the first time about a minute and the second time two or three minutes, and she talked with him both times. State's witness, Crandall, who also made an in-court identification, had a two minute conversation with him. It seems to the Court that the trial court had ample reason for his finding that the state established by clear and convincing evidence that the in-court identifications were based on observations other than the lineup identifications.
The fact that the testimony concerning the lineup identifications was brought out in chambers during the trial rather than at a pretrial hearing on the motion to suppress is an insufficient basis to justify a reversal of the case.
Complaint is made that the state offered evidence of the lineup identifications. This evidence, however, was introduced by the defendant.
The other two questions raised, involve the manner and place of punishment and the length of the sentence. It is contended that twenty-five years for an attempted robbery is cruel or unusual punishment within the meaning of the Constitution of the United States and the Constitution of Mississippi. The Court is not indifferent to matters of punishment, but our system does not permit a review other than on constitutional grounds. We are unable to state that the term meted out to the defendant in this case constitutes cruel or unusual punishment. The fact that the defendant was only sixteen years of age at the time the offense was committed is a factor that no doubt was taken into consideration by the trial judge. No doubt, he felt that he was justified in applying adult punishment for an offense so grievous as attempted armed robbery, which could easily have resulted in the death of the victim.
We have given this case careful consideration and conclude that the record does not reveal reversible error. The case is therefore affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.