**UNITED STATES of America**

v.

**Sheila PAIGE, Defendant.**

**No. 76 Cr. 713 (CHT).**

United States District Court,
S. D. New York.

Nov. 1, 1976.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., by Dominic Amorosa, Asst. U. S. Atty., New York City, for the government.

Goldberger, Feldman & Breitbart by Paul A. Goldberger, New York City, for defendant.

## MEMORANDUM

TENNEY, District Judge.

Defendant Sheila Paige ("Paige") brought this motion to suppress the use of her grand jury testimony in the prosecution of her indictment, predicated upon the circumstances of her grand jury appearance. Upon being subpoenaed to testify before the grand jury, Paige retained an attorney, one William Payten Smith ("Smith"). After consultation with the Assistant United States Attorney in charge of the investigation, Smith accompanied Paige to the grand jury. At the hearing the Government attorney told Paige that she was the target of the grand jury investigation. She requested immunity, but the request was denied. Paige alleges that at this point Smith advised her to testify truthfully, explaining:

"I informed Mr. Smith that my truthful testimony would reveal that I had cut and packaged large quantities of heroin and had been paid for doing this.

"Mr. Smith then again told me to testify and he specifically told me that I could not be indicted on this case.

"In reliance upon Mr. Smith's advice and solely because of such reliance, I did not assert my Fifth Amendment privilege in the Grand Jury after my request for immunity was denied, and I testified fully as to my participation in the activities under investigation by the Grand Jury."

(Affidavit of Sheila Paige, sworn to September 27, 1976, ¶¶ 5–7).

At a hearing before this Court, Smith explained that he had discussed with Paige all the alternatives which might result from her forthcoming grand jury appearance. He stated that he understood from numerous conversations with the Government that "they had enough evidence to indict Miss Paige and that, if she cooperated, they were contemplating allowing her to plead to an information," which he presumed to be a misdemeanor charge. (Transcript at 68). Smith denied ever advising Paige that if she told the truth before the grand jury she could not be indicted because "she hadn't been caught in the act." (Id. at 65).

■ The Court finds Smith's testimony more credible than that of Paige. His advice to Paige was given in good faith and based on the Government's representation that if she cooperated in implicating her "bosses"—the main targets of the particular narcotics investigation—then she would be charged with a lesser crime and her cooperation would be conveyed to the sentencing judge. The Government apparently did not find Paige fully cooperative in the grand jury investigation and therefore decided to indict her. The Court does not find Smith's conduct negligent nor his advice unprofessional. He apprised his client of the circumstances and concluded that her truthful cooperation would probably be most advantageous under the circumstances.

Furthermore, even if the Court were to accept Paige's version of the facts, there would still be no basis for suppression of her grand jury testimony. Paige's motion contends that the incompetence and ill advice from her attorney was so gross as to shock the conscience of the Court and violate her sixth amendment right to effective assistance of counsel and, furthermore, that

it was this sixth amendment denial that caused her to forfeit her fifth amendment privilege. Although Paige's current situation may be lamentable, the Court is unconvinced that any constitutional violation occurred.

■ First, Paige cannot prove a violation of sixth amendment rights. The Supreme Court in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), established the principle that the right to counsel does not arise until criminal proceedings are instituted against an individual. Appearance as a grand jury witness, even when occurring by compulsion of subpoena, is not tantamount to institution of criminal proceedings.[1] *In re Groban*, 352 U.S. 330, 333, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957). Hence, the authority for presence of an attorney at grand jury proceedings is not constitutionally derived, but comes, instead, from Rule 6(d) of the Federal Rules of Criminal Procedure. Insofar as Paige's motion is based upon a sixth amendment violation, then, it must fail.

■ Second, even if the sixth amendment protections were extended to cover grand jury proceedings (although this seems highly unlikely in light of the recent Supreme Court opinion in *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976)), the standard for demonstrating sixth amendment violations is quite stringent and is not met in this case. Conduct which demonstrates a violation of the sixth amendment right to effective assistance of counsel must be of a kind that makes "a mockery of justice" and a "farce" of the judicial process so as to "shock the conscience" of the court. *See, e. g., Holnagel v. Kropp*, 426 F.2d 777, 779 (6th Cir.), *cert. denied*, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970); *Hanks v. United States*, 420 F.2d 412, 414 (10th Cir.), *cert. denied*,

---

1. The right to counsel established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was found to be a fifth amendment right. As explained by the Supreme Court in *United States v. Mandujano*, 425 U.S. 564 n. 6, 96 S.Ct. 1768, 1779, 48 L.Ed.2d 212 (1976), the right to counsel sometimes arising prior to institution of formal criminal proceedings as "mandated by *Miranda* was fashioned to secure the suspect's Fifth Amendment privilege in a setting thought inherently coercive [custodial interrogation]. The Sixth Amendment was not implicated."

398 U.S. 913, 90 S.Ct. 1712, 26 L.Ed.2d 75 (1970). In this instance, the Court finds that no such conduct occurred.

Finally, there is no fifth amendment basis for suppressing Paige's grand jury testimony where movant's failure to avail herself of the privilege against self-incrimination did not result from a deprivation of constitutional due process. Objections on fifth amendment grounds are appropriate where Government authorities unfairly coerce a suspect into incriminating himself in order to facilitate his prosecution and conviction. No such coercion took place here, however. The Supreme Court has recently held that the grand jury forum is noncoercive in the fifth amendment sense. Moreover, the violation Paige complains of did not involve improper conduct by Government officials, which is the only sort of compulsion contemplated by the fifth amendment and its progeny. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The fifth amendment privilege against self-incrimination "proscribes *state* intrusion to extract self-condemnation," *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973) (emphasis added), and "sprang from an abhorrence of *governmental* assault against the single individual accused of crime and the temptation on the part of the *State* to resort to the expedient of compelling incriminating evidence from one's own mouth," *id., citing United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (emphasis added). In addition, the record of the grand jury dialogue reveals that Paige was explicitly informed of her *Miranda* rights including a warning that her testimony could be used against her. Not only does this cure any alleged erroneous legal understanding conveyed by counsel, it clearly reveals the Government's careful observation of due process of law in questioning Paige.

Accordingly, there is no basis in the fifth or sixth amendments for suppression of Paige's grand jury testimony, and the motion must be denied.

So ordered.