54522. LOCKLEER v. THE STATE.

QUILLIAN, Presiding Judge.

Defendant appeals his conviction of two counts of robbery with intent to commit theft. *Held:*

1. Defendant alleges he was prejudiced by "an impermissibly suggestive and prejudicial showup" at police headquarters. We find no error. Two robberies occurred on the afternoon of August 26, 1974, and the defendant was taken into custody the following morning and taken to police headquarters. The two robbery victims were permitted to view the defendant through a two-way mirror as he was required to hold the toy pistol used in the robberies and repeat words used by the robber during the holdup. Both victims identified the defendant as the robber.

The U. S. Supreme Court, in Stovall v. Denno, 388 U. S. 293, 302 (87 SC 1967, 18 LE2d 1199), stated "[t]he practice of showing suspects singly . . . for the purpose of identification. . . has been widely condemned . . . [and a] violation of due process of law in the conduct of a confrontation depends on the totality of the surrounding circumstances. . ." *Davis v. State,* 233 Ga. 847, 850 (213 SE2d 695). In Neil v. Biggers, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401), the court reverted to the "totality of the circumstances" test to admit identification testimony if it was reliable even though the initial confrontation procedure was suggestive. They set forth the criteria for evaluating the possibility of misidentification: 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty of the witness, and 5) the length of time between the crime and the confrontation. Accord, *Yancey v. State,* 232 Ga. 167 (205 SE2d 282); *Sherwin v. State,* 234 Ga. 592, 593 (216 SE2d 810). Neither side opted to establish the existence or lack of any of these criteria. Further, both witnesses were permitted to identify the defendant without objection and to testify about the

showup at the police station. Defendant's counsel finally objected when the witness inquired of the judge about repeating what the robber had stated to him during the robbery. The counsel objected "to that unless the proper foundation is laid . . . Whether or not he had the advice of counsel, whether counsel was present. . ." The objection stated at trial is not the objection made on appeal. But we need not consider this point as the defendant was fully advised of his "Miranda rights" and then *consented* to participating in the lineup without benefit of counsel. Accordingly, this enumeration is without merit.

We wish to emphasize that this court is not approving a "one-on-one" showup, the day following an incident, where no exigent circumstances are present. See Stovall v. Denno, 388 U. S. 293, supra. Neither is this a case where a suspect is apprehended shortly after the incident and is placed before the victim to determine if the police have apprehended an innocent person. See *Davis v. State,* 233 Ga. 847, 849, supra. Nor is this a *post-indictment* showup without counsel. See United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149); Gilbert v. California, 388 U. S. 218 (87 SC 1951, 18 LE2d 1178); and Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 32 LE2d 411).

This is a pre-indictment showup where the suspect is fully advised of his rights, elects not to have counsel, and consents to participation in the showup. We find no error.

2. Defendant's only defense was alibi. The person first robbed on the afternoon of August 26, 1974, testified that he did not have a watch but "it was after 3:00 o'clock . . . Maybe between 3:00 and 3:30. . ." The second person robbed that afternoon estimated the time as "about 4:30." From the description of the suspect and the method used, the police "felt they were" accomplished by the same man.

The first victim was placed in the bathroom at the conclusion of the robbery and told police he stayed there "about ten or fifteen, maybe twenty minutes, before he came out." The police received his call between 3:40 and 3:42 p.m., and placed the robbery "[b]etween 3:00 o'clock and 3:15."

The defense offered as a witness, a counselor from the Augusta Central Drug Clinic. He had known the defendant for "six or seven months." His copy of the

official clinic record, defendant's Exhibit 1, showed the defendant received treatment on the afternoon of August 26, 1974, and gave a urine sample at 3:15 p.m., which meant that he "came in somewhere between 3:00 o'clock and shortly afterwards." Although the witness knew the records were kept in the normal course of business, his record was a "Xerox copy." He could not bring the original "[b]ecause the Federal guidelines won't let us do it."

The state objected to the receipt in evidence of the copy of the official record. The defense asked permission to call another witness to introduce the original record. The state objected and the court ruled: ". . . when you start to go out to get some more witnesses who were not sequestered, then whether they've been in the courtroom or heard any testimony or hadn't, all that, if the other side is objecting, then its the Court's obligation not to let them testify." The court asked both attorneys to go together to the clinic and compare the copy with the original and agree whether defendant's Exhibit 1 is a true copy.

The following day, when the court convened, the defense called Mrs. Ollie Lee, a registered nurse, employed by the Department of Human Resources and Drug Abuse Services at the Augusta clinic. The state objected because "the witnesses were all sequestered yesterday" and he "will object to anything she says" except "as to the contents of these records." The witness then testified that ". . . on August 26th, 3:15, a urinalysis was taken, which is in question. The nurses cannot medicate without having a new urinalysis, so then we're talking about another time, after 3:15, approximately 3:30, kind of thing. He also had contact with his counselor and with myself. This is not written, but this is. . ." The state objected and requested her testimony "be stricken from the record." His objection was sustained and the jury was instructed to disregard.

The defendant alleges it was error to limit the testimony of this witness which was not only corroborative of his alibi but would have extended the time period the defendant was in the clinic for medication and counseling. We agree.

Either party has the right to sequestration of the witnesses and even if the rule is invoked "no mere

irregularity shall exclude the witness" from testifying. Code § 38-1703. We need not decide whether this witness comes within "the rule." Assuming without deciding that the witness is under the rule, even if she had been in the courtroom while others testified, this "did not disqualify her as a witness" (*Dye v. State,* 220 Ga. 113 (2) (137 SE2d 465)), nor render her "incompetent to testify as a witness." *Brooks v. State,* 227 Ga. 339 (2) (180 SE2d 721). Accord, *Pippins v. State,* 224 Ga. 462, 464 (162 SE2d 338); *Scoggins v. State,* 98 Ga. App. 360 (3) (106 SE2d 39); *Yeomans v. State,* 116 Ga. App. 199 (156 SE2d 658); *Stevens v. State,* 117 Ga. App. 41 (3) (159 SE2d 456). The refusal to permit the defendant's competent witness to testify as to his only defense was fatal error. Cf. *Hieber v. Buchanan,* 202 Ga. 831, 834 (44 SE2d 647); *City of Pearson v. Gliddon Co.,* 205 Ga. 738, 742 (55 SE2d 125).

*Judgment reversed. Shulman and Banke, JJ., concur.*

ARGUED SEPTEMBER 16, 1977 — DECIDED JANUARY 9, 1978.

*Chistropher J. Hamilton,* for appellant.
*Richard E. Allen, District Attorney, James W. Purcell, Assistant District Attorney,* for appellee.