**UNITED STATES of America**

**v.**

**James McGRATH et al., Defendants.**

**78 Cr. 315 (HFW).**

United States District Court,
S. D. New York.

Sept. 25, 1978.

See also D.C., 459 F.Supp. 1258.

Robert B. Fiske, Jr., U. S. Atty. for the S. D. of New York, New York City by Sara E. Steinbock, George T. Manning, New York City, of counsel, for the United States of America.

Sanford M. Katz, New York City by Charlene M. Weinstein, New York City, of counsel, for defendant Erlichson.

## MEMORANDUM DECISION

WERKER, District Judge.

Defendant Jacques Erlichson moves to suppress post-indictment, post-arrest statements given to agents of the Drug Enforcement Administration ("DEA") on grounds that his fifth and sixth amendment rights were violated. He was indicted on June 15, 1978 for violations of the federal narcotics laws and arrested a week thereafter.

In an affidavit submitted in support of the instant motion, Erlichson states that after his arrest he was read "something" by the arresting officers from a form or card and informed the officers that he did not desire to answer any questions and wished to confer with an attorney. Despite this, he asserts, he was questioned for thirty or forty-five minutes on the way to DEA headquarters where he was asked to sign a waiver of rights form but refused. Thereafter he was questioned by the two arresting officers and others, and again requested an attorney. The request was ignored, and he made the statements attributed to him. The following day he was brought to the United States Attorney's Office prior to arraignment for an interview with the attorney prosecuting the action. There he stated that he did not want to answer any questions and wished to consult an attorney. At that point the interview was terminated.

Subsequent to submission of the defendant's affidavit a suppression hearing was held. The defendant, electing to assert his fifth amendment privilege against self-incrimination, did not testify. The following are my findings of fact and conclusions of law after the hearing of September 18, 1978.

On the evening of June 22, 1978, at approximately 6:30 p. m. agents Anthony Jacaruso and John Heckmann, along with others, drove to Erlichson's place of employment at 25 Broad Street, New York City. An appointment had been made by another agent with Erlichson, who thought Jacaruso was a messenger delivering certain materials from a former employer. Jacaruso identified himself as a police officer, told Erlichson he was under arrest and indictment, and advised him not to make any statements until he was advised of his rights. The two left the office quietly; Erlichson was not handcuffed. Outside the office they met agents Heckmann and Werden. Heckmann and Jacaruso entered a car with Erlichson and departed for DEA headquarters on 11th Avenue and 57th Street. While still in the Wall Street area the agents stopped the car to advise Erlichson of his rights,[1] and that any questions he had would be answered in detail. Specifically, Jacaruso advised defendant that he was arrested for involvement in a marijuana conspiracy, that he had a right to remain silent, that any statements made could be used against him, that he had a right to have an attorney and a right to have an attorney present at any time, and that if he could not afford an attorney one would be provided for him. Erlichson said he understood, and when asked if he had ever been arrested previously he answered in the affirmative. When asked if that arrest was effected by DEA, he indicated that it had been. Erlichson inquired as to how he could avoid the arrest and was told he could not. At this point he indicated that he wished to cooperate and said that he knew of the McGrath-Schaller marijuana conspiracy. Jacaruso told him that he had to be processed at headquarters, and that they could talk further there. Erlichson continued that he was concerned about the arrest and did not want his employers to know of it. Jacaruso, when asked if Erlichson appeared upset and concerned, answered in the affirmative. Erlichson did not, however, appear to be distraught, crying, or whimpering. The defendant also told the agents that he knew an attorney but did not want to call him; he indicated that he

---

1. The testimony is conflicting as to whether the defendant's constitutional rights were read from a piece of paper or not. All agree, however, that such rights were given in the automobile.

would think about contacting him. At no time did he ask to call that attorney. During the balance of the ride a conversation ensued and Jacaruso asked Erlichson about his knowledge of Schaller and McGrath. Erlichson made statements about others involved in the conspiracy and spoke of possible cocaine transactions in South America.

The car arrived at DEA headquarters at approximately 7 p. m. Erlichson was processed and thereafter brought into a room where Jacaruso and Heckmann were present. Two other officers who assisted in the arrest, Frawley and Werden, apparently entered and left the room intermittently. Here Erlichson was shown a copy of the indictment and again advised of his rights. No waiver of ·rights form was executed. Erlichson acknowledged the rights, and stated that he had an attorney but did not want to call him at this time. Erlichson was questioned for about twenty minutes and proceeded to make three telephone calls, none of which was to an attorney. He called his employer two times and his sister, with whom he conversed in another language, once.

After 7:30 p. m. agents Heckmann and Jacaruso proceeded to drive Erlichson to the Metropolitan Correctional Center. Since Erlichson indicated he was hungry, Jacaruso entered a diner to obtain a sandwich for him and a cup of coffee for each. The defendant paid for his own refreshments and ate during the ride. He also answered more questions about the present case until his arrival at the Center at 8 p. m.

The following morning Erlichson was brought to the United States Attorney's Office for a pre-arraignment interview. The Assistant United States Attorney advised him of his constitutional rights and told him to obtain an attorney. In response Erlichson indicated that he desired an attorney and the interview ceased.

## DISCUSSION

Defendant's sixth amendment right to counsel attached prior to his arrest with the filing of the indictment. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). His statements to the

government agents are therefore inadmissible unless he "knowingly and intelligently" waived his sixth amendment rights. *United States v. Satterfield,* 558 F.2d 655, 657 (2d Cir. 1976), *citing Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The government, in a case such as this, assumes "the heavy burden of proving that any inculpatory statements thus obtained were voluntarily given after a valid waiver of the right to counsel." *United States v. Lord,* 565 F.2d 831, 839 (2d Cir. 1977) (citations omitted). In the present case that burden was satisfied.

Erlichson was advised of both his fifth and sixth amendment rights in the automobile and again at DEA headquarters. He was informed of the indictment at least two times, once at his office and subsequently in the police car. He was also shown a copy of the indictment. When confronted with the facts, Erlichson, unlike the defendant in *Satterfield, supra,* was at no time crying, whimpering, or manifesting signs of emotional stress. *See United States v. Lord,* 565 F.2d at 840. And, again unlike the *Satterfield* defendant, Erlichson had access to a telephone at DEA headquarters and chose to place *three* telephone calls. None of those calls was made to an attorney although one certainly could have been had the defendant so desired. In reaching my determination I place particular emphasis on those three calls; that factor, coupled with the agents' testimony that Erlichson at no time requested an attorney and instead specifically stated that he did not want one, utterly discredits the statements in defendant's affidavit. Finally, Erlichson, like the *Lord* defendant, had been arrested previously and was thus no novice to the arrest process.

For the foregoing reasons I find neither a sixth amendment violation under *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 2 L.Ed.2d 246 (1964), nor a fifth amendment violation under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694 (1966). The motion to suppress is denied accordingly.

SO ORDERED.