STATE OF NEW JERSEY, PLAINTIFF, v. TERENCE R. SCALES, DEFENDANT.

Superior Court of New Jersey
Law Division Mercer County

Decided September 23, 1986.

*Randolph D. Norris,* Asst. Pros., for State of N.J. (*Paul T. Koenig, Jr.,* Mercer Cty. Pros.).

*Jack L. Seelig* (*Seelig and Rednor,* attorneys) and *Anthony J. DeLellis* for defendant.

DeMARTIN, J.

This is a pretrial motion by defendant for an order striking a state's witness and suppressing any statements made by defendant to that witness.

On September 23, 1984, defendant Terence R. Scales was arrested by the Freehold Borough Police Department and charged with possession of a stolen automobile. Defendant was subsequently charged with murder and other related offenses pertaining to the death of Paul Harris, Jr., which occurred in Mercer County on or about September 21, 1984.

On November 2, 1984, a Mercer County Grand Jury returned Indictment No. 1240–11–84, to which Scales entered a plea of not guilty. On November 7, 1984 the Prosecutor filed a Notice of Aggravating Factors, thereby demanding the death penalty. *R.* 3:13–4(a).

The defendant has been incarcerated at the Mercer County Detention Center from September 1984 to the present. The trial began on April 7, 1986.

During the trial, on April 14, 1986, Stanley Kathcart, a fellow inmate of defendant, contacted the Mercer County Prosecutor's Office, through his attorney and reported that on the previous night (Sunday, April 13, 1986) defendant had confessed to Kathcart his involvement in the murder of Paul Harris, Jr. Kathcart then gave a formal written statement to the Prosecutor's Office. This new information was communicated by assistant Prosecutor Norris to all parties in court on April 15, 1986 and upon defense counsel's unopposed motion, a mistrial was declared on April 16, 1986.

The information provided by Kathcart is of major significance since it provides the State with its only direct evidence that defendant committed the killing by his own conduct.

The Mercer County Prosecutor's Office has revealed that Kathcart, while incarcerated at the Mercer County Detention Center, worked as an informant for the Detention Center Internal Affairs Division from March 14, 1986 to March 23, 1986. His involvement in two internal investigations resulted in the suspension of one correction officer, and no action against the second due to insufficient evidence.

In addition, Kathcart had previously been an informant/undercover agent for the Special Investigation Unit of the Mercer County Prosecutor's Office from September 1, 1983 through November 30, 1983. As a result of Kathcart's assistance seven persons were arrested and charged with narcotic offenses.

Kathcart also had additional contacts with Mercer County Special Investigative Unit on November 12, 1983 (Kathcart was

provided with money for motel); December 20, 1984 (offer by Kathcart to turn over an illegal gun); June 25, 1985 (offer of information on an outstanding armed robbery); and July 17, 1985 (offer of assistance concerning Medicaid fraud of a local physician).

The Prosecutor states that at no time did the State instruct or employ Kathcart to obtain admissions from Scales.

This Court is now presented with an issue that was not decided in *U.S. v. Henry,* 447 *U.S.* 264, 100 *S.Ct.* 2183, 65 *L.Ed.* 2d 115 (1980), but one that United States Supreme Court Justice Powell specifically identified and discussed in his concurring opinion in that case. The precise issue is whether admission of an unsolicited confession to a fellow inmate who was previously employed by the State as an informant violates the defendant's Sixth Amendment right to counsel.

The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." [1]  *Gideon v. Wainwright,* 372 *U.S.* 335, 339, 342, 83 *S.Ct.* 792, 793, 795, 9 *L.Ed.*2d 799 (1963); *Estelle v. Smith,* 451 *U.S.* 454, 469, 101 *S.Ct.* 1866, 1876, 68 *L.Ed.*2d 359 (1981). The peripheral scope of this constitutional right has been the subject of some differences of opinion within the U.S. Supreme Court. *Brewer v. Williams,* 430 *U.S.* 387, 398, 97 *S.Ct.* 1232, 1239, 51 *L.Ed.*2d 424 (1977), *reh'g den.* 431 *U.S.* 925, 97 *S.Ct.* 2200, 53 *L.Ed.*2d 240 (1977). Nonetheless, its basic contours are well established, that the right to counsel accrues "at or after the time that adversary proceedings have been initiated ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Ibid.; Kirby v. Illinois,* 406 *U.S.* 682, 688–689, 92 *S.Ct.* 1877, 1881–82, 32 *L.Ed.*2d 411 (1972); *State v. Farrow,* 61

---

[1] In addition, Article 1, paragraph 10 of the New Jersey Constitution establishes a defendant's right to the assistance of counsel in criminal prosecutions.

N.J. 434, 449 (1972), *cert.* den. 410 *U.S.* 937, 93 *S.Ct.* 1396, 35 *L.Ed.*2d 602.

■ Once the right to counsel has attached and been asserted, the State must, of course, honor it. *Maine v. Moulton,* 474 *U.S.* 159, ——, 106 *S.Ct.* 477, 484, 88 *L.Ed.*2d 481, 492 (1985). The Prosecutor and police have an affirmative obligation not to act in a manner that circumvents the protection afforded a defendant under the Sixth Amendment. *Id.,* 474 *U.S.* at ——, 106 *S.Ct.* at 484–85, 88 *L.Ed.*2d at 492–493.

Terence R. Scales was indicted on November 2, 1984. It is clear, in this case, that defendant's Sixth Amendment right to counsel had attached at the time of the alleged confession. The critical issue is whether that right would be violated by allowing Stanley Kathcart to procede as a witness for the State.

Defendant relies largely on the U.S. Supreme Court decision in *U.S. v. Henry, supra,* to support his assertion that his constitutional right would be thereby abrogated. Recognizing that Kathcart was acting as an informant "just two weeks prior to the alleged confession," Defendant argues that Kathcart was an agent of the State at all times relevant to this issue.

The case of *U.S. v. Henry, supra,* is controlling. Although not squarely on point, *Henry* presents a set of facts similar to those of the instant case. Recitation of the *Henry* facts is thus warranted.

The defendant in *Henry* was arrested and indicted for bank robbery. Counsel was appointed and Henry was held in jail pending trial. Nichols, an inmate at the same jail and a paid informant for the Federal Bureau of Investigation, told a government agent that he was housed in the same cellblock as several federal prisoners, including Henry. The agent told Nichols to be alert to any statements made by these prisoners, but not to initiate any conversation with or question Henry regarding the bank robbery. Nichols and Henry subsequently engaged in "some conversations" during which Henry described to Nichols the details of the robbery. Nichols testified

as to these conversations at Henry's trial, and Henry was convicted.

The Supreme Court reversed the conviction holding that the Government intentionally created a situation likely to induce Henry to make incriminating statements without the assistance of counsel, in violation of the defendant's Sixth Amendment right to counsel. *U.S. v. Henry, supra,* 447 *U.S.* at 274, 100 *S.Ct.* at 2188.

The *Henry* Court defined the issue before it as "whether a Government agent 'deliberately elicited' incriminating statements from Henry within the meaning of *Massiah.*" In the case of *Massiah v. U.S.,* 377 *U.S.* 201, 84 *S.Ct.* 1199, 12 *L.Ed.*2d 246 (1964), the Supreme Court first applied the Sixth Amendment to postindictment communications between the accused and agents of the Government. After the accused had been charged, he made incriminating statements to his codefendant who had permitted a Government agent to install a radio transmitter in his automobile. *Id.* at 202–203, 84 *S.Ct.* at 1200–01. In reversing the conviction, the *Massiah* Court held that the accused was denied "the basic protections of [the Sixth Amendment] when there was used against him at his trial evidence of his own words, which federal agents had deliberately elicited from him." *Id.* at 206, 84 *S.Ct.* at 1203.

The Court in *Henry* emphasized three factors which were important in determining that a Government agent had deliberately elicited incriminating statements from the defendant. *U.S. v. Henry, supra,* 447 at 270, 100 *S.Ct.* at 2186.

First, Nichols was acting "under instructions as a paid informant for the Government," and therefore had an incentive to produce useful information. *U.S. v. Henry, supra,* at 270, 100 *S.Ct.* at 2187. In fact, the *Henry* Court specifically noted that the arrangement between Nichols and the agent was on a contingent fee basis. *Ibid.* "[T]he service requested of Nichols was that he obtain incriminating information from Henry." *Id.*

at 270, n. 7, 100 *S.Ct.* at 2187, n. 7. Nichols was to be paid only if he produced useful information. *Id.* at 270, 100 *S.Ct.* at 2186.

The second important factor under *Henry* in determining whether there was deliberate elicitation by the Government was the informant's appearance to the defendant as nothing more than a fellow inmate. *U.S. v. Henry, supra,* at 270, 100 *S.Ct.* at 2186.

The final factor discussed by the Court was that Henry was in custody under indictment at the time he was engaged in conversation by Nichols. *U.S. v. Henry, supra,* at 270, 100 *S.Ct.* at 2186. The Court reasoned that "confinement may bring into play subtle influences that will make [an individual] particularly susceptible to the ploys of undercover Government agents," influences that were facilitated by Nichols' "apparent status as a person sharing a common plight." *Id.* at 274, 100 *S.Ct.* at 2188–89. In light of these circumstances, the Court concluded that Nichols "deliberately used his position to secure incriminating information from Henry when counsel was not present," in violation of the Sixth Amendment. *Id.* at 270–271, 100 *S.Ct.* at 2187.

In the case at bar, Defendant argues that the above three factors set forth in *Henry* are present. As previously stated, the first factor considered in *Henry* was that Nichols was acting under instructions as a paid informant for the Government. Defendant argues that it may be inferred that Kathcart was acting in his capacity as an informant because he immediately informed the authorities that he had received information from defendant concerning his trial. This, Defendant argues, taken in conjunction with the fact that Kathcart had "previously cooperated with other state agencies as an informant" renders him a state agent at the time of the alleged confession. In addition, defendant contends that "[n]o issue should be made that the State did not request Kathcart to discuss with [Defendant], or any other inmate, his case."

Although appearing to retain the "deliberately elicited" test of *Massiah*, the *Henry* Court seems to have adopted a standard of "intentional creation of a situation likely to induce," which was the precise holding in *Henry, supra*, at 274, 100 *S.Ct.* at 2189. Defendant asks this Court to take *Henry* one step further by declaring that admission of an unsolicited confession to one who has previously acted as a government informer on other matters, violates the right to counsel.

■ The circumstances presented here are not enough, in this Court's opinion to constitute a violation of Defendant's Sixth Amendment right to counsel under *U.S. v. Henry, supra*. The State has furnished proofs that Kathcart's involvement with the State ended two weeks prior to the alleged confession. Thus, there is no proof before this Court that Kathcart was a "Government agent" at the time of the alleged confession. The proofs are that he was not.

More important, there is no evidence in the instant case that the State "deliberately elicited" or "intentionally created a situation likely to induce" incriminating statements from defendant within the meaning of *Henry*. Here, no request was made by Government authorities of Kathcart to obtain information from, or regarding the defendant.

In *Henry*, the Court specifically noted that it was clear that the agent in his discussions with Nichols, "singled out Henry as the inmate in whom the agent had a special interest." *U.S. v. Henry, supra*, at 271, n. 8, 100 *S.Ct.* at 2187, n. 8. In addition, "the agent only instructed Nichols not to question or initiate conversation regarding the bank robbery charges. Under these circumstances, Nichols remained free to discharge his task of *eliciting* the statements in a myriad of less direct ways." *Ibid.*, emphasis supplied.

In this case there is no such deliberate elicitation of information from defendant by Kathcart at the request of the State. Under these circumstances, and under the law as it is presently defined by the Supreme Court of the United States, this Court

can find no violation of defendant's Sixth Amendment right. *Accord U.S. v. Harris,* 738 *F.2d* 1068 (9th Cir.1984) (after federal indictment of defendant, state informant acting without knowledge of federal indictment and investigating defendant for transactions unconnected to federal indictment, did not violate defendant's Sixth Amendment right within meaning of *U.S. v. Henry* ); *U.S. v. Panza,* 750 *F.2d* 1141 (2d Cir.1984) (where a coparticipant in crime did not act on behalf of the Government in obtaining incriminating admission from defendant, there was no deliberate elicitation by Government and thus no Sixth Amendment violation); *U.S. v. Hearst,* 563 *F.2d* 1331 (9th Cir.1977), *cert.* den. 435 *U.S.* 1000, 98 *S.Ct.* 1656, 56 *L.Ed.* 2d 90 (1978) (Sixth Amendment not violated in the absence of any governmental effort to elicit incriminating statements from defendant, where passive listening device collected, but did not induce statement.)

It is noteworthy that Justice Powell in his concurring opinion in *Henry* assured that he would not join in the Court's opinion if it held that the mere presence or incidental conversation of an informant in a jail cell would violate *Massiah.* *U.S. v. Henry, supra,* 447 *U.S.* at 277, 100 *S.Ct.* at 2190 (Powell, J., concurring).

From a policy standpoint, the "value" and "unfortunate necessity" of undercover work should be appreciated and adequately accomodated by the courts. *See U.S. v. Henry, supra,* at 280–281, 100 *S.Ct.* at 291–92 (Blackmun, J., and White, J., dissenting). Were this Court to adopt the rule that defendant urges, any time a former informant were to fortuitously receive information from a prisonmate those statements would be rendered inadmissible at the defendant's trial.

The U.S. Supreme Court has stopped short of adopting such a sweeping rule.

The motion is denied.