■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALBERT MARR, Appellant.— Judgment of Supreme Court, New York County rendered March 31, 1971, resentencing the defendant *nunc pro tunc* as of March 15, 1949, upon his conviction after a jury trial in the former Court of General Sessions, New York County, affirmed. The dissent postulates that a hearing is required on the possible suggestiveness of the identification with respect to the conviction on the first count for stealing the patrolman's revolver. Sentence was suspended on this count. The defendant was arrested in 1948 and taken to Harlem Hospital where the patrolman whose revolver he had taken and who had been hurt in

the melee, was in the process of being discharged. The patrolman candidly admitted that he was not certain of the identification made at the hospital because it took place in the corridor at the time he was concerned about completing his hospital discharge. However, the patrolman shortly thereafter made positive identification at the precinct where he had a better chance to observe the defendant. It is these "showups" at the hospital and at the precinct, which defendant claims deprived him of due process. The issue is whether "'the confrontation conducted in this case [i.e., the show up] was so unnecessarily suggestive and conducive to irreparable mistaken identification that * * * [the appellant was] denied due process of law'" (*People* v. *Gonzalez*, 27 N Y 2d 53, 57). The pretrial identification was conducted prior to the decision of the Supreme Court in *United States* v. *Wade* (388 U. S. 218), and whatever the requirements mandated by that case and in the case of *Gilbert* v. *California* (388 U. S. 263), they are not specifically retroactive (*Stovall* v. *Denno*, 388 U. S. 293). In any event, the Supreme Court has made it clear that "the *Wade-Gilbert per se* exclusionary rule" is not being extended (*Kirby* v. *Illinois*, 406 U. S. 682). The witness was a patrolman directly involved because it was his revolver that was stolen in the course of his attempt to arrest one Austin, who later accompanied the defendant in the tailor shop robbery, which is the second of the two counts for which the defendant was convicted and incarcerated. Under all of the circumstances, defendant was not deprived of due process, and a hearing 23 years after the event would not serve the interest of justice. Concur — Markewich, J. P., Kupferman, Steuer and Eager, JJ.; Murphy, J., dissents in the following memorandum: This is a direct appeal (resentencing *nunc pro tunc*) from a judgment of conviction rendered March 15, 1949 convicting the defendant, after a jury trial, of two counts of robbery in the first degree. One robbery involved the taking of a police officer's gun and the second robbery was the holdup of a tailor shop. Police officer Wipper's revolver was taken from him while he was arresting one Edward Austin. A large hostile crowd gathered around him in the street forcing him to pull his gun which was subsequently wrested from him. He testified that he saw the defendant at the scene for 10 to 15 seconds. The officer was confined to the hospital for four days, and on the day he was to be discharged the defendant was arrested and taken to the hospital where Patrolman Wipper was in the process of being discharged. Although identifying him, the police officer admitted it was not a positive identification. A few hours later Patrolman Wipper went to the station house and identified the defendant who was in the presence of a detective and a codefendant. The hospital "show up" and the police station showup were certainly suggestive; and when considered with the questionable identification at the hospital and the fact that the record is silent as to the details of the identification in the station house, and that concededly "darkness enshrouded the scene of the robbery", it cannot be said that Wipper's in-court identification had an independent basis or that it was free of any "taint". A hearing is required to determine whether there was such an independent basis since this record is incomplete on the material points. To assume, as the People suggest, that "accepted police procedures in existence in 1948 were followed" in the station house identification or that the patrolman had an independent basis for identifying the defendant because he was "trained to observe events and people under tension" is to make unsupported inferences that have no basis in the record. Finally, merely because the appeal took 23 years should not act as a bar to a proper record. Obviously both sides have been prejudiced by the delay, but in different ways.