STATE OF NORTH CAROLINA v. MARY CLARA ADAMS

No. 9412SC559

(Filed 4 June 1996)

**Constitutional Law § 264 (NCI4th); Infants or Minors § 15 (NCI4th)— filing of civil juvenile abuse petition—attachment of right to counsel in criminal abuse proceeding**

Defendant mother's Sixth Amendment right to counsel attached in a criminal juvenile abuse proceeding after the filing of a civil abuse petition, even though there had been no formal criminal charge, preliminary hearing, indictment, information or arraignment; therefore, where counsel had been appointed to represent defendant in the civil abuse proceeding pursuant to N.C.G.S. § 7A-587, a statement given without defendant's attorney

**STATE v. ADAMS**

[122 N.C. App. 538 (1996)]

being present or without an express waiver of the right to counsel must be suppressed in the criminal abuse prosecution.

**Am Jur 2d, Criminal Law §§ 746, 972; Infants § 16.**

**Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.**

**Validity and construction of penal statute prohibiting child abuse. 1 ALR4th 38.**

Appeal by the State from order entered 21 April 1994 by Judge B. Craig Ellis in Cumberland County Superior Court. Heard in the Court of Appeals 21 February 1995.

On 27 November 1992, defendant Mary Clara Adams and her fiancé, Joseph Gullick, took their five-month-old daughter to Cape Fear Valley Medical Center for treatment for anal fissures. Cape Fear Valley Medical Center referred the infant to Duke University Hospital for evaluation of possible physical and sexual abuse. Based upon this evaluation, Cumberland County Department of Social Services (DSS) filed a petition on 9 December 1992 in Cumberland County District Court alleging abuse and neglect. Pursuant to N.C. Gen. Stat. § 7A-587, the court appointed an attorney to represent the defendant regarding the abuse petition on 14 December 1992.

As required by N.C. Gen. Stat. § 7A-548(a), DSS reported the suspected abuse to local law enforcement agents. On 7 December 1992, DSS contacted Detective Jo Autry of the Cumberland County Sheriff's Department. As part of her investigation, Detective Autry telephoned the defendant's mother on December 22nd. Defendant's mother stated that defendant had an attorney who had advised defendant not to talk to law enforcement. Autry then contacted defendant's attorney and requested she bring in the defendant for an interview. The attorney indicated that she represented the defendant only for the civil charges, but would speak with defendant about an interview.

On 30 December 1992, defendant, accompanied by her attorney, submitted to a taped interview with Detective Autry at the law enforcement center. Defendant also submitted to a polygraph examination the next day. Autry contacted defendant on 2 February 1993 and told her she needed to discuss the results of the polygraph. Autry testified she had no further direct or indirect contact with defendant until 4 March 1993. Detective Autry also testified that early in the

investigation she suspected defendant's fiancé, but by February 2nd she had focused on defendant as the primary suspect.

Defendant testified she informed Detective Autry during the February 2nd phone call that she did not wish to speak with Autry without her attorney, but Autry told her the attorney "had nothing to do" with what she was investigating. Defendant also testified that Detective Autry or others from the police department telephoned and left approximately twenty-two messages for her. She stated the tone of the messages changed over time from "you need to come to you better come." Defendant testified she received a call at work on Wednesday March 3rd relaying a message from Detective Autry. Defendant was told that if she did not come to the law enforcement center by 5:00 p.m. on Friday March 5th, she would be arrested at work. On 4 March 1993, defendant left a note at the law enforcement center for Detective Autry stating she would be back "as my part of our agreement." Defendant testified she left the note "[t]o let her know that I was trying to be there before Friday at five o'clock so she would know that I was doing what she asked of me so she wouldn't come and arrest me at my job." Defendant testified she attempted to contact her attorney, but was told her attorney was ill and not in the office. Defendant then left a message for her saying "please call me at work," but her attorney did not receive the message until she returned to the office on March 7th.

Defendant returned to the law enforcement center at 4:00 p.m. on March 5th. After taking a second polygraph examination, defendant was questioned by Detective Autry, Sergeant Terri Putman, and Detective Nancy Cressler. Defendant claims she asked to call her attorney, but was told she had already been called. Defendant testified that Detective Autry screamed at her that defendant was not a good mother, that she did not love her child, and that Autry would have the child removed so that defendant would never see her again. Both Detective Autry and Sergeant Putman testified they did not yell at defendant, and that defendant never asked for her attorney.

At one point during the questioning, Detective Autry left the room. During this time, defendant made allegedly inculpatory statements to Sergeant Putman. When Detective Autry returned, defendant repeated these statements to her. Detective Autry informed defendant she would be criminally charged with abuse, but allowed defendant to leave the law enforcement center to get something to eat. When defendant returned an hour later, she was arrested.

**STATE v. ADAMS**

[122 N.C. App. 538 (1996)]

Defendant filed a motion to suppress her statements made during the March 5th questioning. After a hearing on 11 March 1994, the trial court entered an order dated 21 April 1994 granting defendant's motion to suppress. The court found as a matter of law that defendant's Sixth Amendment right to counsel had attached, and because defendant was represented by counsel, statements made without her attorney present should be suppressed. From this order the State appeals.

*Michael F. Easley, Attorney General, by Thomas B. Murphy, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellee.*

McGEE, Judge.

The determining issue on appeal is whether a defendant's Sixth Amendment right to counsel attaches in a criminal juvenile abuse proceeding after the filing of a civil abuse petition, even though there has been no formal criminal charge, preliminary hearing, indictment, information, or arraignment. Because of the parallel nature of the civil petition and the criminal charge and because both are based upon the same facts, we affirm the trial court's order that where, as here, a defendant is represented by counsel in the civil abuse proceedings, defendant's Sixth Amendment right to counsel attaches upon filing of the abuse petition, and any statement given without the defendant's attorney being present or without an express waiver of the right to counsel must be suppressed.

The Sixth Amendment of the United States Constitution provides that: "In all criminal prosecutions the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. This right attaches "at or after the time that adversary judicial proceedings have been initiated against [the defendant]." *Kirby v. Illinois*, 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417 (1972). Such proceedings as a preliminary hearing, indictment, information, arraignment, or the filing of formal charges have been held to trigger the Sixth Amendment right to counsel. *Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 417. When judicial proceedings have been initiated, "the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society . . . ." *Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 418.

The State argues the Sixth Amendment has no application absent an initiation of a criminal prosecution against the accused. While we agree that the presence of one of the formal criminal proceedings listed in *Kirby* is almost always required before a defendant's Sixth Amendment right to counsel will attach, we hold that when a civil juvenile abuse petition has been filed, "the adverse positions of government and defendant have solidified" and the parent faces "the prosecutorial forces of organized society" in such a way as to trigger the defendant's right to counsel. This is so because of the unique nature of the juvenile proceedings.

Whenever DSS discovers evidence that a juvenile may have been abused as defined under N.C. Gen. Stat. § 7A-517(1), it must immediately report the suspected abuse to the district attorney's office and must notify local law enforcement within forty-eight hours. N.C. Gen. Stat § 7A-548(a). Also, DSS may request the assistance of state or local law enforcement officers to help with the investigation and evaluation of the seriousness of the alleged abuse. N.C. Gen. Stat § 7A-544. Likewise, if a law enforcement agency or any other person or institution suspects a juvenile has been abused, they must report this information to DSS. N.C. Gen. Stat. § 7A-543. Within forty-eight hours of DSS' notification of suspected abuse, the local law enforcement agency shall "initiate and coordinate a criminal investigation with the protective services investigation being conducted by [DSS]." G.S. 7A-548(a). Therefore, whenever abuse has been alleged, DSS and law enforcement coordinate their respective investigations from the beginning.

If an investigation indicates abuse has occurred, DSS must determine what actions are needed to protect the juvenile and whether a petition will be filed. G.S. 7A-544. Once a civil abuse petition is filed, the parent faces the prosecutorial forces of organized society. *See New Jersey v. P.Z.*, 666 A.2d 1000 (N.J. Super. Ct. App. Div. 1995) (holding that the state and defendant are adversaries in a civil juvenile abuse action, thereby triggering Sixth Amendment right to counsel in criminal abuse action upon filing of civil petition). To protect the rights of a parent facing such civil abuse charges, the parent has a right to counsel, or to appointed counsel in cases of indigency, unless the parent waives the right. N.C. Gen. Stat. § 7A-587.

Because of the reciprocal duty for DSS and law enforcement to inform each other of evidence of abuse, and because of the dual nature of the civil and criminal abuse investigations, parallel civil and

criminal systems both operate against the defendant once proceedings have begun in either civil or criminal court. The dangers protected against by the right to counsel granted under G.S. 7A-587 in a civil abuse proceeding are equally inherent in criminal proceedings based upon the same facts. Since the civil and criminal aspects of juvenile abuse proceedings are so intertwined, upon the filing of a civil juvenile abuse petition a parent faces the "prosecutorial forces" of organized society and judicial proceedings have been initiated so as to trigger the Sixth Amendment right to counsel.

Further, in the case of *In re Maynard*, 116 N.C. App. 616, 448 S.E.2d 871 (1994), *disc. review denied*, 339 N.C. 613, 454 S.E.2d 254 (1995), this Court held that where the respondent had counsel appointed pursuant to G.S. 7A-587, the situation was "analogous to the situation where a defendant in a criminal case has counsel. Once a defendant invokes his right to counsel and counsel is retained or appointed, the defendant has the right to have counsel present during any questioning." *Maynard*, 116 N.C. App. at 620, 448 S.E.2d at 874. In *Maynard*, DSS filed a petition accusing respondent of neglect. The court appointed an attorney for respondent pursuant to G.S. 7A-587. After respondent stipulated that because of her mental illness the children were dependent as defined by N.C. Gen. Stat. § 7A-517(13), DSS, during respondent's scheduled visitations with the children, continually attempted to convince her to sign a consent to adoption. DSS conducted these discussions without respondent's counsel being present or without notifying her counsel, even though respondent had previously refused to sign the consent after conferring with her attorney and had stated in court that she wished to have her children returned. Respondent eventually signed the consent after yet another discussion with DSS without her attorney present. Respondent's attorney later filed a motion to set aside the consent to adoption.

This Court, in affirming the trial court's grant of respondent's motion, held respondent had a right to counsel when signing the consent forms since the signing occurred following and as a consequence of the neglect proceeding for which counsel had been appointed. *Maynard*, 116 N.C. App. at 619-20, 448 S.E.2d at 873. In finding that respondent had been denied the right to counsel, this Court said:

Just as custodial interrogation of a criminal defendant in the absence of his appointed or retained counsel without a waiver is impermissible, petitioner's continuing discussions . . . urging the reluctant respondent to sign the [consent to adoption] without

her counsel being present or at least having any knowledge of the discussions violated respondent's right to counsel.

*Maynard,* 116 N.C. App. at 620-21, 448 S.E.2d at 874.

Not only did defendant's Sixth Amendment right to counsel attach upon filing of the civil petition, but also defendant was denied her right to counsel under *Maynard.* Here, as in *Maynard,* defendant had an attorney appointed pursuant to G.S. 7A-587. Once counsel was appointed, defendant had the right to have her attorney present for questioning. This right extends to all contacts which occur "following and as a consequence of" and are "directly related to" the proceedings for which counsel has been appointed. *Maynard,* 116 N.C. App. at 619-20, 448 S.E.2d at 873. Because *Maynard* prevents DSS from contacting a represented party in a juvenile action without notifying the attorney, and since the criminal and civil investigations are so intertwined, law enforcement officers are equally prohibited from questioning a represented parent regarding a juvenile abuse proceeding without the presence or notification of counsel unless the right is waived.

While civil and criminal juvenile abuse proceedings have different aims, namely protection of the child versus punishment of the abuser, the distinctions between the two actions often become blurred. As this Court has recognized, investigators involved on one side of civil/criminal abuse proceedings can become involved on the other side. *See State v. Morrell,* 108 N.C. App. 465, 424 S.E.2d 147, *motion to dismiss allowed, disc. review denied, and cert. denied,* 333 N.C. 465, 427 S.E.2d 626 (1993) (holding that a social worker representing abused child acted as a law enforcement agent where worker had contact with law enforcement regarding the case prior to questioning defendant, thereby rendering defendant's custodial statements made to worker inadmissible). Because of the blurring of the two actions, it is particularly important to protect the rights of a defendant entangled in the intricacies of both civil and criminal law. This protection is best provided by counsel.

In this case, defendant had appointed counsel for the civil abuse petition. The police investigators knew defendant had an attorney and set up defendant's first questioning through her attorney. Her attorney accompanied her for this questioning. Later, the police contacted defendant's attorney asking to speak with defendant again. The trial court judge found the defendant's attorney informed defendant that she did not have to talk to the police if she did not want to.

Defendant then indicated that she did not want to talk to the police again. The court further found that Detective Autry advised the defendant's father "if the defendant did not come in and talk with her at the Law Enforcement Center, that the Officers would have to have [the defendant] arrested." Defendant's father advised his daughter that she should go to the Law Enforcement Center and talk to the officers, as the defendant "could not afford to be arrested on her job." Because defendant feared she would be arrested at work if she did not go to the police station at the officer's request, defendant felt she had no choice but to go to the station without her attorney on 5 March 1993. Although the defendant's attorney was appointed for representation in the civil action, defendant cannot be expected to recognize the blurred distinctions between the civil and criminal actions. She only knew that she had an attorney and wished to have that attorney present for questioning. Under the Sixth Amendment and the decision of this Court in *Maynard*, defendant had a right to have counsel present. Since defendant never waived this right, her statements obtained without counsel cannot be used against her. The order of the trial court suppressing defendant's statements is affirmed.

Affirmed.

Judges EAGLES and WALKER concur.