**UNITED STATES of America, Plaintiff,**

v.

**Harvey Joe BOWMAN, Bobbie Jean Bowman, John Malcolm Hartley, Roger Williams, Darlene Sadi, and Wilfred Jay Cunningham, Defendants.**

**No. CR–03–C–0056–E.**

United States District Court, N.D. Alabama, Eastern Division.

Aug. 9, 2003.

Randy B Brooks, Brooks Harmon & Monk, Anniston, AL, Steven H Sadow, Atlanta, GA, for Defendant.

Alice H Martin, US Attorney, Bill L Barnett, US attorney's office, Birmingham, AL, United States Marshal's Office, Birmingham, AL, United States Probation Office, Birmingham, AL, for U.S.

## MEMORANDUM OPINION GRANTING BOWMAN DEFENDANTS' MOTION TO SUPPRESS STATEMENTS

CLEMON, Chief Judge.

### I. The Facts.

The operative facts underlying Defendants Harvey Joe and Bobbie Jean Bowman's Motion to Suppress are undisputed.

It is the policy of the Department of Justice ("DOJ") that

> ... every United States Attorney's office ... should have a system for coordinating the criminal, civil, and administrative aspects of all white collar crime matters within the office. The system should contain management procedures to address issues of parallel proceedings including:
>
> • timely assessment of the civil and administrative potential in all criminal case referrals, indictments, and declinations;
>
> • timely assessment of the criminal potential in all civil case referrals and complaints;
>
> • early and regular communication between civil and criminal attorneys regarding qui tem and other civil referrals, especially when the civil case is developing ahead of the criminal prosecution; and coordination, when appropriate, with state and local authorities.

Consistent with our responsibility to make law enforcement efforts more efficient and effective, prosecutors should consult with the government attorneys on the civil side and appropriate agency officials regarding the investigative strategies to be used in their cases. With proper safeguards, evidence can be

obtained without the grand jury by administrative subpoenas, search warrants, and other means.

DOJ Criminal Resource Manual No. 2464, dated July 28, 1997.

On May 17, 2001, Plaintiff United States of America ("the Government") filed in this Court a forfeiture action styled, *United States v. Land, Calhoun County, etc., et al.*, (CV–01–1346). This *in rem* action named as defendants: (a) eight separate parcels of real estate in Calhoun, Etowah, St. Clair, and Jefferson County, Alabama; (b) eleven automobiles; (c) two motorcycles; and (d) $ 216,146.16 in currency. In the complaint, Assistant United States Attorney ("AUSA") James D. Ingram alleged, *inter alia:*

3. (a) That the Platinum Club ("the club"), located at 263 Weatherbrook Lane, Anniston, Alabama, is an adult nightclub which advertises nude dancing as a form of entertainment. The club consists of a main building and two smaller adjacent structures. The owners and operators of the Platinum Club are Harvey J. Bowman and his wife, Bobbie J. Bowman; who have owned and operated the club since approximately 1993.

(b) That for several years, the IRS, the FBI, and the Calhoun County, Alabama Sheriff's Office ("CCSO") have received reports from private citizens and other law enforcement agencies that the Bowmans employ "exotic dancers" at the Platinum Club who also engage in various sexual activities with patrons of the club for money; these activities occur both on and off the club's premises.

(c) That Harvey Bowman and Bobbie J. Bowman actively and knowingly promote these prostitution activities; to-wit: Harvey J. Bowman sets the prices for these various sexual acts; payment for these sexual services are typically made directly to the dancer, who then delivers the payment to Harvey J. Bowman; and the Platinum Club retains a significant percentage of all monies paid for said sexual activities.

(d) That many of these female dancers who also engage in prostitution are actively recruited by Harvey J. Bowman and Bobbie J. Bowman from other states to work at the Platinum Club.

(e) That the Platinum Club accepts major credit cards as a form of payment for sexual services rendered by the club's dancers. For purposes of protecting the identity of its patrons who "purchase" sexual services, charge receipts reflect the name of "The Ranch House, Inc."

*Id. at* 2–3. A week after the first forfeiture action was filed, on May 24, 2001, AUSA Ingram filed a second forfeiture action, naming as defendants: (a) eight additional parcels of land in Anniston (including the "Platinum Club"), Southside, Ashville, Weaver, and Birmingham, Alabama; (b) eleven automobiles—several of them antique; and (c) two motorcycles. The specific accusations against the Bowmans were identical to those in the first forfeiture action.

The Bowmans timely filed verified claims against the properties sought to be forfeited, and sought to stay the civil forfeiture actions on the ground that they were the subjects of a related criminal investigation. The motions were filed by the prominent Birmingham criminal defense law firm of Jaffe, Strickland, and Drennan, P.C. Nationally prominent criminal defense lawyers Bobby Lee Cook and Steven H. Sadow commenced their representation of the Bowmans in February, 2002.

The Government has at all material times known that the Bowmans were represented by these lawyers.

The subsequent *ex parte* seizure of the Platinum Club and other property owned by the Bowmans was hotly contested. Indeed, as of this date, the Bowman's interlocutory appeal of the *post*-seizure order lies in the breast of the Eleventh Circuit Court of Appeals.

Despite its knowledge that the Bowmans were represented by counsel, and without notice to their counsel, the Government arranged with Santana Pensara, a former dancer at the Platinum Club, to obtain incriminating statements from the Bowmans. Pensara had previously perjured herself before the grand jury investigating the Platinum Club and the Bowmans. Without the assistance of the Government, Pensara faced the virtual certainty of a federal prison term. The Government thus secured Pensara's agreement, and at its direction, she was wired with a taping device and dispatched to interrogate the Bowmans along the lines suggested by the Government. AUSA Ingram was involved in the Government's arrangement with Ms. Pensara.

On January 31, 2003, the Bowmans and their alleged co-conspirators were indicted in the instant case. The indictment incorporates the allegations articulated against the Bowmans in the forfeiture actions.

The Government will seek to introduce at trial evidence obtained by Ms. Pensara in her Government-engineered recorded conversation with the Bowmans on August 16, 2002. By their motions to suppress, the Bowmans object to this evidence.

## II. The McDade Amendment Analysis

The McDade Amendment to the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999 provides, in relevant part:

An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that state.

28 U.S.C. § 530B(a).

The McDade Amendment was enacted in response to DOJ regulations which interpreted American Bar Association ("ABA") Model Rule 4.2 as not prohibiting "contact with a represented individual in the course of authorized law enforcement activity." The DOJ committed itself to resisting, "on 'Supremacy Clause grounds,' any disciplinary action against federal prosecutors by state authorities for violation of ethics rules that interfered with 'legitimate federal law enforcement techniques.'" *Federal Prosecutors, State Ethics Regulations, and the McDade Amendment*, 113 Harv. L.Rev. 2080, 2085 (2000). The McDade Amendment was enacted "[t]o restrain the perceived overzealousness of federal prosecutors and to prevent the DOJ from exempting its prosecutors from ethics rules...." *Id.*, at 2088. It has been described as "the most significant change in the ethics regulation of federal prosecutors in more than twenty years." *Id.*

The ABA Standing Committee on Ethics and Professional Responsibility has issued Formal Opinion 95–396. In that opinion, the Committee advises that the Rule 4.2 no-contact "prohibition applies to the conduct of lawyers in both civil and criminal matters, and covers any person known to be represented by a lawyer with respect to the matter to be discussed."

Attorneys who practice law in this State are bound by the Alabama counterpart of ABA Rule 4.2:

**Communication with Person Represented by Counsel.**

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another

lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Alabama Rule of Professional Conduct 4.2 ("the Rule").

The commentary to the Rule indicates that it "covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question."

On its face, the Rule bars the communication between the Government's agent and the Bowmans in the context of this case. The only question is whether the prohibited communication is otherwise "authorized by law."

Considering that the McDade Amendment was principally designed to dismantle the DOJ's policy of authorizing pre-indictment *ex parte* interrogation by federal prosecutors and their agents of represented criminal suspects, the argument that such post-McDade Amendment interrogations in the course of legitimate criminal investigations are "authorized by law" is, at best, disingenuous. To the extent that such interrogations were at one time authorized by the regulations of the DOJ, the McDade Amendments vitiate those regulations. As shown below, the Sixth Amendment bars such interrogations in the unique circumstances of this case.

The only case cited by the Government in support of its position is *United States v. Martin L. Grass and Franklin C. Brown,* 239 F.Supp.2d 535 (M.D.Pa.2003). The case is distinguishable on the ground that, unlike the Bowmans, the *Grass* defendants were not litigating the identical matter in a contemporaneous civil proceeding initiated by the Government. The Court there pointed out that "... [the Government informer] recorded the conversations with the Defendants *before the initiation of adversarial proceedings....* " *Id.* at 542. (emphasis added).

■ The Court concludes that Ms. Pensara's conversations with the Bowmans were not authorized by law. The statements made by the Bowmans were thus procured in derogation of the Rule. The suppression of those statements will deter similar violations of the Rule in the future.

### III. The Sixth Amendment Analysis

The Sixth Amendment' right to counsel attaches upon the first formal charging proceeding or as soon as "the government's role shifts from investigation to accusation," *Moran v. Burbine,* 475 U.S. 412, 428–30, 106 S.Ct. 1135, 1144–46, 89 L.Ed.2d 410 (1986). *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Chief Justice Rehnquist has written:

> The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." ... [O]ur cases have long recognized that the right to counsel attaches only at or after the initiation of **adversary judicial proceedings** against the defendant.

*United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. at 2294, 2297, 81 L.Ed.2d 146 (1984). (emphasis added).

■ The Government argues that there were no adversary proceedings against the Bowmans because forfeiture actions are *in rem,* rather than *in personam.* But the argument exalts form over substance. First, forfeiture actions are certainly "judicial proceedings." Second, the properties at issue are owned by the Bowmans, they have filed claims in the litigation, and they are the real parties in interest. Thus, the "sides" to the forfeiture litigation are the Government and the Bowmans. In that litigation, their positions are quintessentially adversarial.

Pursuant to published DOJ policy, the forfeiture and criminal proceedings are in the same bag. Long before Ms. Pensara became AUSA Ingram's agent and he exercised the Government's unbridled discretion in the timing of the criminal indictment in this case, he had already effectively indicted the Bowmans in the civil forfeiture context. Significantly, AUSA Ingram's signature appears on the indictment as well as the forfeiture actions.

In sum, the Court finds and concludes that the Government's role had shifted from investigation to accusation at the time when Ms. Pensara became the agent of the Government. It is not simply that the Bowmans were represented by counsel at the pre-indictment stage; it is also that they were engaged in an adversary judicial proceeding at the time of their conversations with the Government's agent.

It follows that the statements made to Ms. Pensara are due to be suppressed. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Kirby, supra; Gouveia, supra.*

By separate order, the Bowman Defendants' Motion to Suppress their statements made to Santana Pensara on August 16, 2002, will be granted. In all other respects, and for reasons stated into the record, the motion will be denied.